**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**Civil Action No.: 3:24-cv-00382-KDB-SCR**

JULIE ROBERTS and JUDITH SIGMON, *individually and on behalf of all others similarly situated*,

Plaintiffs,

vs.

THE CHARLOTTE-MECKLENBURG HOSPITAL AUTHORITY (d/b/a ATRIUM HEALTH),

Defendant.

**DEFENDANT CMHA'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(1) AND PARTIAL MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)**

## TABLE OF CONTENTS

**Page**


INTRODUCTION ........................................................................................ 1

STATEMENT OF FACTUAL RECORD FOR PURPOSES OF THIS MOTION ....... 4

A. CMHA's Web Properties, the use of pixels, and Plaintiffs' specific allegations ........................................................................ 4

B. The use of tracking technologies and HHS' issuance of the Bulletin ........................................................................................ 7

C. The nature of Plaintiffs' proposed class ................................................ 8

D. The nature of Plaintiffs' claims ............................................................ 9

LEGAL STANDARD ................................................................................... 10

ARGUMENT .............................................................................................. 12

I. Plaintiffs' ECPA claim should be dismissed. ....................................... 12

II. Federal jurisdiction is not supported by CAFA. .................................. 15

A. The Court should decline CAFA jurisdiction under the mandatory local controversy exception to CAFA. ..................... 15

B. The Court should decline CAFA jurisdiction under the discretionary local controversy exception to CAFA. .................. 19

III. The Court should decline to exercise supplemental jurisdiction over the remaining state-law claims. .................................................. 21

IV. Even if the Court retains jurisdiction over the Plaintiffs' unjust-enrichment claim, it should be dismissed. .......................................... 24

CONCLUSION ............................................................................................ 25

ARTIFICIAL INTELLIGENCE CERTIFICATION ................................................ 27

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Allen v. Novant Health*,
No. 1:22-CV-697, 2023 WL 5486240 (M.D.N.C. Aug. 24, 2023) ............ 3, 13, 14, 25

*Am. Hosp. Ass'n v. Becerra*,
No. 4:23-cv-1110, 2024 WL 3075865 (N.D. Tex. June 20, 2024) .......................... 2, 8

*Arrington v. City of Raleigh*,
369 F. App'x 420 (4th Cir. 2010) ........................................................................ 23

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ............................................................................................ 11

*Aziz v. Alcolac, Inc.*,
658 F.3d 388 (4th Cir. 2011) ......................................................................... 10, 11

*Bartels v. Saber Healthcare Grp., LLC*,
880 F.3d 668 (4th Cir. 2018) .............................................................................. 11

*Bell Atlantic Corp. v. Twombly*,
550 U.S. 544 (2007) ............................................................................................ 10

*Brown v. Learfield Comm's LLC*,
No. 1:23-CV-00374-DAE, 2024 WL 3676709 (W.D. Tex. June 27, 2024) .............. 14

*Cook v. S.C. Pub. Serv. Auth.*,
No. 6:19-CV-03285-TLW, 2020 WL 869741 (D.S.C. Jan. 21, 2020) ................ 17, 21

*Expert Bus. Sys., LLC v. BI4CE, Inc.*,
233 F. App'x 251 (4th Cir. 2007) ........................................................................ 12

*Goldberg v. Skyline Tower Painting Inc.*,
No. 1:23-CV-01708-JRR, 2024 WL 1050942 (D. Md. Mar. 10, 2024) ..................... 17

*Henderson v. Harmon*,
102 F.4th 242 (4th Cir. 2024) ....................................................................... 12, 22

*Hinson v. Norwest Fin. S.C., Inc.*,
239 F.3d 611 (4th Cir. 2001) .............................................................................. 21

*In re Google Inc. Cookie Placement Consumer Priv. Litig.*,
806 F.3d 125 (3d Cir. 2015) ......................................................................... 12, 13

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

*L. v. Priority Tr. Servs. of N.C., L.L.C.*,
No. 3:08-CV-103, 2008 WL 3539512 (W.D.N.C. Aug. 11, 2008) ............................ 11

*Neinaber v. Overlake Hosp. Med. Ctr.*,
No. 2:23-cv-01159-TL, 2024 WL 2133709 (W.D. Wash. May 13, 2024) ................ 14

*Okash v. Essentia Health*,
No. CV 23-482 (JRT/LIB), 2024 WL 1285779 (D. Minn. Mar. 26, 2024) .............. 14

*Regency Ctrs. Acquisition, LLC v. Crescent Acquisitions, LLC*,
No. 17 CVS 11354, 2018 WL 562749 (N.C. Super. Ct. Jan. 24, 2018) .................. 24

*Rodriguez v. Fastmed Urgent Care*,
No. 5:23-CV-403-D, 2024 WL 3541582 (E.D.N.C. July 24, 2024) .......... 3, 14, 15, 22

*Rorie v. The Charlotte-Mecklenburg Hosp. Auth.*,
Case No. 23-CVS-6166, (N.C. Super. Ct. Apr. 4, 2023) ........................................ 21

*Scott v. Cricket Comm'ns, LLC*
865 F.3d 189 (4th Cir. 2017) ........................................................................... 16

*Shanaghan v. Cahill*,
58 F.3d 106 (4th Cir. 1995) ............................................................................... 21

*Simpson v. StoneMor GP, LLC*,
No. 3:23-CV-00217-KDB-SCR, 2024 WL 1340561 (W.D.N.C. Mar. 28, 2024) ....... 23

*Weddle v. WakeMed Health and Hosps.*,
No. 22 CVS 13860, 2023 WL 8369786 (N.C. Super. Ct. Dec. 4, 2023) ............ 24, 25

*Williams v. DukeHealth*, No. 1:22-CV-727, 2024 WL 898051 (M.D.N.C. Mar. 1, 2024), *report and recommendation adopted sub nom. Naugle v. Duke Univ. Health Sys., Inc.*, No. 1:22-CV-727, 2024 WL 1307216 (M.D.N.C. Mar. 27, 2024) ..................................................................... 3, 11, 14

**Statutes**

N.C. Gen. Stat. § 7A45.4(a)5, (b)(2) ..................................................................... 23

18 U.S.C. § 2510 ........................................................................................................ 3

28 U.S.C. § 1332 ........................................................................ 4, 11, 15-17, 19-21

28 U.S.C. § 1367(c) ............................................................................... 4, 21, 22

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

**Rule**

Fed. R. Civ. P. 12(b)(1) .......... 4

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF NORTH CAROLINA**
**CHARLOTTE DIVISION**
**Civil Action No.: 3:24-cv-00382-KDB-SCR**

| | |
|---|---|
| JULIE ROBERTS and JUDITH SIGMON, *individually and on behalf of all others similarly situated*,<br><br>Plaintiffs,<br><br>vs.<br><br>THE CHARLOTTE-MECKLENBURG HOSPITAL AUTHORITY (d/b/a ATRIUM HEALTH),<br><br>Defendant. | **DEFENDANT CMHA'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFFS' THIRD AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(1) AND PARTIAL MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)** |

## INTRODUCTION

This lawsuit was brought by two plaintiffs who assert a handful of North Carolina common-law claims and one federal statutory claim. Plaintiffs contend that these claims arise from the use by The Charlotte-Mecklenburg Hospital Authority d/b/a Atrium Health ("**CMHA**") of commonplace marketing tools and technology on its websites provided by both Meta Platform Inc. ("**Meta**," previously Facebook) and Google. Plaintiffs allege that they were harmed because their browsing of CMHA's website using these technologies supposedly led them to receive unwanted advertisements. Third Am. Compl. ¶¶ 14, 45, 47, 66, 69, 183 (hereinafter "**Compl**.").

Plaintiffs' primary legal contentions are that CMHA's use of this technology violates North Carolina law because state common-law claims should incorporate guidance issued by federal agencies. Specifically, Plaintiffs point to a bulletin on

tracking technologies issued by the U.S. Department of Health and Human Services' Office of Civil Rights ("**HHS**") in December 2022 (updated in March 2024 and again in June 2024) (collectively, the "**Bulletin**")[1] and blog posts on tracking technologies by the Federal Trade Commission published in March 2023 and July 2023 (the "**Blog Posts**"). Compl. ¶¶ 15-19 & nn.6-8, 223 n.57, 250-252 & nn.65-66.

Plaintiffs' theory posits that, although CMHA ceased using this technology in October 2022 before the Bulletin and Blog Posts were issued, their state-law claims should incorporate this federal guidance and apply it retroactively. *See id.* Their theory also suggests that the Bulletin provides a basis for state-law claims even though the U.S. District Court for the Northern District of Texas vacated a portion of the Bulletin because it constituted impermissible agency rulemaking. *See Am. Hosp. Ass'n v. Becerra*, No. 4:23-cv-1110, 2024 WL 3075865, at *7, 11 (N.D. Tex. June 20, 2024); *see also id.* ¶ 17 n.6.

CMHA's Motion, however, does not ask the Court to assess the soundness of Plaintiffs' legal theories. Rather, the focus of CMHA's Motion is primarily jurisdictional. The point of the foregoing is to illustrate that, but for their single federal statutory claim, Plaintiffs' claims present novel issues of state law and have

[1] *See* Use of Online Tracking Technologies by HIPAA Covered Entities and Business Associates, available at https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/hipaa-online-tracking/index.html (Dec. 1, 2022) attached as **Exhibit 1** (the "**Original Bulletin**"); Use of Online Tracking Technologies by HIPAA Covered Entities and Business Associates, available at https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/hipaa-online-tracking/index.html (Mar. 18, 2024 & updated June 26, 2024), attached as **Exhibit 2** (the "**Revised Bulletin**").

a nexus to North Carolina—namely, how and to what extent federal-agency guidance substantively impacts claims under North Carolina common law. Because the Court should dismiss Plaintiffs' only federal claim, these features of Plaintiffs' remaining claims are relevant to whether the Court should decline supplemental federal jurisdiction under 28 U.S.C. § 1367(c) (*see* Part III *infra*) and should (if necessary) apply the discretionary local exception to the Class Action Fairness Act ("**CAFA**"), 28 U.S.C. § 1332(d), to decline CAFA jurisdiction (*see* Part II.B. *infra*).

Plaintiffs rest original federal jurisdiction on two bases—federal question jurisdiction by virtue of pleading a claim under the federal Electronic Communications Privacy Act ("**ECPA**"), 18 U.S.C. § 2510, *et seq*. (Compl. ¶ 35) and diversity jurisdiction by virtue of CAFA (Compl. ¶ 36). This Court, however, should follow the decisions of other courts and dismiss Plaintiffs' ECPA claim—the only claim supporting federal question jurisdiction. *See Rodriguez v. FastMed Urgent Care, P.C.*, No. 5:23-CV-403-D, 2024 WL 3541582, at *6 (E.D.N.C. July 24, 2024) (dismissing ECPA claim in Meta Pixel case); *Williams v. DukeHealth*, No. 1:22-CV-727, 2024 WL 898051, at *8-9 (M.D.N.C. Mar. 1, 2024) (same), *report and recommendation adopted sub nom. Naugle v. Duke Univ. Health Sys., Inc.*, No. 1:22-CV-727, 2024 WL 1307216 (M.D.N.C. Mar. 27, 2024); *Allen v. Novant Health*, No. 1:22-CV-697, 2023 WL 5486240, at *4 (M.D.N.C. Aug. 24, 2023) (same).

Without a federal claim to support federal question jurisdiction, the Court should assess whether Plaintiffs have properly based jurisdiction on CAFA. *See Williams*, 2024 WL 898051, at *11-12 (requiring plaintiff to address basis for CAFA

jurisdiction upon dismissal of federal ECPA claim). As set forth below, because more than two-thirds of Plaintiffs' proposed class members are citizens of North Carolina, the Court should apply CAFA's "mandatory local controversy exception" and determine that the Court lacks jurisdiction under CAFA. 28 U.S.C. § 1332(d)(4)(B). Alternatively, if the Court does not conclude that more than two-thirds of class members are citizens of North Carolina, because it is virtually certain that more than one-third of class members are citizens of North Carolina, the factors of the "discretionary local controversy exception" call on the Court to decline CAFA jurisdiction. *Id.* § 1332(d)(3).

Without a basis for jurisdiction under 28 U.S.C. § 1331 or §1332, the Court should next consider whether to exercise supplemental jurisdiction over the remaining state-law claims. 28 U.S.C. § 1367(c). Because these claims raise novel state law issues, given the interests of North Carolina in Plaintiffs' claims and the interests of judicial economy, the Court should dismiss them in favor of adjudication in North Carolina state court.

Finally, if the Court exercises jurisdiction over Plaintiffs' state-law claims, it should dismiss Plaintiffs' unjust-enrichment claim for failing to state a claim.

## STATEMENT OF FACTUAL RECORD FOR PURPOSES OF THIS MOTION[2]

### A. CMHA's Web Properties, the use of pixels, and Plaintiffs' specific allegations

[2] This statement of facts includes assertions made by Plaintiffs in the Complaint as well as facts set forth in the Declarations of Lakesha Holloway and Mark Rhodes provided in support of CMHA's Motion made pursuant to Fed. R. Civ. P. 12(b)(1).

CMHA is a hospital authority incorporated in North Carolina, and headquartered in Charlotte, North Carolina. Compl. ¶ 34; Declaration of Lakesha Holloway ¶ 4 (hereinafter "**Holloway Decl.**"). For the period relevant to Plaintiffs' Complaint, CMHA operated numerous hospitals, emergency departments, and physician practices primarily located in the state of North Carolina, with a substantial concentration of those services in Charlotte and its surrounding counties. Compl. ¶ 2; Holloway Decl. ¶ 7.

Like most health care providers, CMHA operates a public website, atriumhealth.org, through which it provides a means for the public to obtain information about its health care services. Compl. ¶ 3; Holloway Decl. ¶ 5. The website provides information about the nature of those services, the kind of health care specialty services CMHA offers, the location of facilities, and information about individual providers. Compl. ¶ 3; *see also* Holloway Decl. ¶ 5. Although the nature of CMHA's website has changed over time, some features have included information about appointments and the ability to search for information through a search bar. *See* Compl. ¶¶ 22, 48, 72. CMHA's website also includes a patient portal, "MyAtriumHealth," where patients may access their health records. *Id.* ¶¶ 3, 50, 74; Holloway Decl. ¶ 6. Plaintiffs define CMHA's website, "atriumhealth.org," and the related patient portal, "MyAtriumHealth," accessed from atriumhealth.org, together as CMHA's "**Web Properties**." Compl. ¶ 3.

Plaintiffs allege that CMHA utilized tracking technologies—and in particular, the pixel technologies provided by Meta and Google—on its Web

Properties. *Id.* ¶¶ 4, 9. This pixel technology (like pixel technologies offered by other digital advertisers) is a piece of computer code incorporated into a webpage to gather information about how users interact with the webpage while browsing. *Id.* ¶¶ 90-95. The technology helps organizations like CMHA measure the efficacy of their digital marketing efforts, including, for CMHA, whether efforts to make the public aware of health care services have been successful. *See id.* ¶¶ 14, 97-98, 126.

According to Plaintiffs, information gathered through pixel technology can be transmitted to Meta or Google in certain ways. *Id.* ¶¶ 104, 116-23. Plaintiffs allege, for example, that when information is collected by the Meta Pixel, a unique ID is sent to Facebook that allows Facebook to identify the user and send that user digital advertising in a browser or social media platform. *Id.* ¶¶ 47, 68, 86, 104, 194.

Plaintiff Julie Roberts asserts she has been a patient of CMHA "since approximately 2006" and used CMHA's website "since at least September 2020." *Id.* ¶ 39. Plaintiff Judith Sigmon asserts she has been a patient of CMHA "since approximately 2007" and used CMHA's website "since on or about 2007." *Id.* ¶ 61.

Both Plaintiffs allege that they are Facebook users. *Id.* ¶¶ 47, 49, 57, 68, 73, 80. They assert that they browsed CMHA's website to search for information related to health conditions, doctors, and related subjects and to schedule appointments. *Id.* ¶¶ 43-44, 48, 65, 72. Plaintiffs contend that when they visited CMHA's website, the information they provided to CMHA was then conveyed to Facebook via the Meta Pixel, and that resulted in Plaintiffs "receiv[ing] spam and

ads on Facebook and other social media related to medications and prescriptions" and "specific health conditions." *Id.* ¶¶ 45, 66.

### B. The use of tracking technologies and HHS' issuance of the Bulletin

Pixels or similar computer code and applications that help website operators understand website users' interactions with websites are more broadly described as "tracking technologies." *Id.* ¶¶ 1, 90, 120. These technologies have been used on a widespread basis in modern-day advertising and commerce. *Id.* ¶¶ 89, 97, 112, 125. In the health care industry, for example, as of June 2022, 33 of the 100 largest hospital systems extensively used tracking technologies on their consumer websites. *Id.* ¶¶ 111 & n.25. As of 2022, more than 664 hospital systems and providers used some form of tracking technology on their digital properties. *Id.* ¶¶ 111 & n.26.

During the time that Plaintiffs allege that CMHA used pixel technology, however, HHS, the agency charged with administering HIPAA, had not promulgated any regulatory pronouncement, rule, or other communication that addressed how regulated entities might use tracking technologies. HHS first provided tracking technology guidance on December 1, 2022, when it issued the Bulletin. *See* Original Bulletin. The Bulletin explained that tracking technologies have many benefits, including that they may "improve care or the patient experience." *Id.* It further explained, *inter alia*, that depending on the kind of information tracking technology collects, the manner in which information is used, and the parties to which information is shared, some uses of tracking technology were inconsistent with the requirements of HIPAA. *Id.* On March 18, 2024, HHS

revised the Bulletin to provide more examples and further explain how tracking technology could be used and should not be used in the health care environment. *See* Revised Bulletin; *see* Compl. ¶ 245 n.63.

On June 20, 2024, the U.S. District Court for the Northern District of Texas vacated substantial portions of the Bulletin. *Am. Hosp. Ass'n*, 2024 WL 3075865, at *17. In that case, the American Hospital Association and health care providers challenged the authority of HHS to issue the Bulletin. *Id.* at *3. On summary judgment, the district court held that the Bulletin reflected new legal requirements that constituted an agency action subject to judicial review. *Id.* at *7. The court reviewed the Bulletin and held that HHS exceeded its authority in promulgating a rule that concluded that the use of individuals' IP addresses through tracking technologies on unauthenticated websites constituted the unauthorized use of protected health information under HIPAA. *Id.* at *11.

**C. The nature of Plaintiffs' proposed class**

Plaintiffs propose a nationwide class of individuals in the United States "whose Private Information was disclosed to a third party without authorization or consent through the Meta Collection Tools or Google Collection Tools on Defendant's Web Properties." Compl. ¶ 301. They do not make any assertions about the proportion of class members who are North Carolina citizens. Both individual Plaintiffs appear to allege, however, that at the time they used CMHA's Web Properties they resided in North Carolina. *Id.* ¶¶ 31, 32. Although CMHA does not currently have analytics tracking where individuals are located when they are using

its Web Properties generally, it does have a record of the addresses listed by individuals who have established MyAtriumHealth patient portal accounts.

As of April 10, 2024, the date that Plaintiffs filed this action, there were approximately 2,686,902 individuals who had established MyAtriumHealth patient portal accounts. Declaration of Mark Rhodes ¶ 9 (hereinafter "**Rhodes Decl.**"). Of that number, 2,120,765 accountholders (approximately 79%), reported that their state of residence was North Carolina. *Id.* The residencies of other accountholders are dispersed among the remaining 49 states and other jurisdictions. *Id.* The next most represented state of residence among MyAtriumHealth patient portal accountholders is South Carolina, where approximately 270,000 accountholders say they reside. *Id.*

The purpose of the Web Properties is to provide information and resources to individuals concerning health care facilities and health care providers that are a part of CMHA. Holloway Decl. ¶ 5. An overwhelming portion of the health care facilities and providers that are part of CMHA are located in North Carolina. *Id.* ¶ 7. It is CMHA's experience that users of CMHA's Web Properties are directed to and use its Web Properties largely because they are located near CMHA facilities when they are using its Web Properties and usually also live near and around CMHA facilities. *Id.* ¶ 8.

### D. The nature of Plaintiffs' claims

Plaintiffs allege seven claims. The first claim asserts that because Plaintiffs provided information to CMHA while using its Web Properties and CMHA disclosed that information to Meta or Google, CMHA should be liable for having "intercepted"

a communication from Plaintiffs in violation of the ECPA. Compl. ¶¶ 314-54. Plaintiffs' other claims are based on North Carolina common law. Those claims include breach of express contract, breach of the obligation of good faith and fair dealing, breach of implied contract, negligence, breach of fiduciary duty, and unjust enrichment. Each of the North Carolina common-law claims expressly or impliedly rest on notions that North Carolina law should be interpreted to incorporate substantive provisions of the Bulletin or the Blog Posts. In particular, they assert that, based on statements such as those made in the Bulletin and the Blog Posts, information collected by tracking technologies impermissibly discloses protected health information under HIPAA and other federal law. *See, e.g.*, *id.* ¶¶ 245-249 (alleging pixel technology use violates Bulletin); *id.* ¶¶ 250-52 (alleging violation of FTC Act). The legal contention that this information is protected under federal law is the basis for each of Plaintiffs' North Carolina common-law claims. *See id.* ¶¶ 361, 381, 401, 422, 434, 440 (allegations concerning use of protected health information defined based on Bulletins).

## LEGAL STANDARD

For the portion of CMHA's Motion brought under Rule 12(b)(6) asserting that Plaintiffs have failed to state a claim under the ECPA (Count One) and for unjust enrichment (Count Seven), the Plaintiffs' "'[f]actual allegations must be enough to raise a right to relief above the speculative level,' thereby 'nudg[ing] their claims across the line from conceivable to plausible.'" *Aziz v. Alcolac, Inc.*, 658 F.3d 388, 391 (4th Cir. 2011) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). While the Court "must accept the material facts alleged in the complaint as

true, statements of bare legal conclusions 'are not entitled to the assumption of truth' and are insufficient to state a claim." *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 664 (2009)); *see also Williams*, 2024 WL 898051, at *3 (citing similar standard for ECPA claims posed in class-action complaint against health care provider).

For the portion of CMHA's Motion that seeks to apply the mandatory local controversy exception of CAFA (28 U.S.C. § 1332(d)(4)(B)) or the discretionary local controversy exception of CAFA (28 U.S.C. § 1332(d)(3)), CMHA has the burden to demonstrate by a preponderance of the evidence the factual requirements of those exceptions; namely, that CMHA is a North Carolina citizen and class members are citizens of North Carolina in proportions that meet the requirements of those exceptions. *L. v. Priority Tr. Servs. of N.C., L.L.C.*, No. 3:08-CV-103, 2008 WL 3539512, at *4 (W.D.N.C. Aug. 11, 2008) (burden to show local controversy applies is on proponent of CAFA exception by a preponderance of the evidence); *accord Bartels v. Saber Healthcare Grp., LLC*, 880 F.3d 668, 681 (4th Cir. 2018) (burden to demonstrate exception to CAFA is on proponent of exception). The Court's application of the discretionary local controversy exception is a matter committed to the Court's discretion upon consideration of the factors enumerated in the statute, the interests of justice, and the totality of the circumstances. 28 U.S.C. § 1332(d)(3).

For the portion of CMHA's Motion that requests that the Court decline to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c), the Court has discretion to determine whether to decline supplemental jurisdiction over state-law claims upon consideration of the convenience and fairness to the parties, the

existence of any underlying issues of federal policy, comity, and considerations of judicial economy. *Henderson v. Harmon*, 102 F.4th 242, 251 (4th Cir. 2024).

## ARGUMENT

### I. Plaintiffs' ECPA claim should be dismissed.

Plaintiffs' ECPA claim requires Plaintiffs to assert that the defendant, not another party, intercepted the plaintiff's private communications. More specifically, a plaintiff must plausibly allege that the defendant "(1) intentionally (2) intercepted, endeavored to intercept or procured another person to intercept or endeavor to intercept (3) the contents of (4) an electronic communication, (5) using a device." *In re Google Inc. Cookie Placement Consumer Priv. Litig.*, 806 F.3d 125, 135 (3d Cir. 2015).

Crucial to determining if a defendant "intercepted" a communication sufficient to state an ECPA claim is whether the plaintiff's allegations indicate that the defendant was *not* a party to the communications at issue. If the defendant was a party to the communication, the defendant could not have "intercepted" the communication and therefore is not liable under the ECPA. *Id.* at 145; *accord Expert Bus. Sys., LLC v. BI4CE, Inc.*, 233 F. App'x 251, 253 (4th Cir. 2007) (holding defendant did not violate ECPA where it forwarded confidential emails received from plaintiff to a third party).

In a context involving technology similar to the technology at issue here, the Third Circuit examined whether Internet "cookies" installed in class members' browsers that shared information with digital advertiser defendants could support an ECPA claim. *In re Google*, 806 F.3d at 142-43. Even though plaintiffs alleged

that defendant advertisers installed browser cookies that transmitted information without plaintiffs' knowledge or consent, the court held that the information transmitted by cookies reflected communications to which defendants were parties and, therefore, could not support an ECPA claim. *Id.* at 143.

The pixel technology here is similar to the cookie technology in *In re Google*. Like the facts in that case, Plaintiffs allege in this case that defendant CMHA "install[ed], configur[ed] and us[ed] pixels and other technologies on its Website" (Compl. ¶ 4) and that, when users interacted with CMHA's website, the pixel technology sent CMHA information (*id.* ¶¶ 22, 140). Plaintiffs further allege that searching CMHA's website using keywords (*id.* ¶ 149) or attempting to make appointments with providers through CMHA's website (*id.* ¶ 159), for example, allowed CMHA to collect information. According to Plaintiffs, CMHA "shared," "disclosed," or "transmitted" this information to Meta or Google by further operation of pixel technology. *Id.* ¶¶ 22, 47, 69, 159, 162, 165, 167, 189. But the fundamental allegations are the same as *In re Google*: technology installed by CMHA, used by Plaintiffs, collected information Plaintiffs sent to CMHA in communications to which CMHA was a party. CMHA, therefore, did not "intercept" information and cannot be liable for an ECPA claim.

For these exact reasons, other federal courts in North Carolina have dismissed ECPA claims against healthcare providers who likewise used pixel technology. In *Allen v. Novant Health*, the U.S. District Court for the Middle District of North Carolina dismissed plaintiff's ECPA claim, concluding that the

defendant "received" information by virtue of pixel technology and did not intercept it. 2023 WL 5486240, at *4. Information was "sent to [defendants] directly and specifically by the plaintiffs, and . . . Facebook [not defendant] . . . intercepted the communication via the pixel." *Id.* Likewise, in *Williams v. DukeHealth*, the court concluded that pixel allegations constituted the "mere receipt of a communication" which "does not constitute a violation" under the ECPA. 2024 WL 898051, at *8. And the U.S. District Court for the Eastern District of North Carolina reached the same result in *Rodriguez*, 2024 WL 3541582, at *5-6. There, the court similarly determined that plaintiffs did not state an ECPA claim because data exchanged through pixel technology constituted communications to which the defendant was a party. *Id.* at *5-6.

Federal district courts outside North Carolina have also dismissed ECPA claims based on pixel technology for these reasons. *See Neinaber v. Overlake Hosp. Med. Ctr.*, No. 2:23-cv-01159-TL, 2024 WL 2133709, at *15 (W.D. Wash. May 13, 2024) (health care defendant was a party to communications and not liable under ECPA), *Okash v. Essentia Health*, No. CV 23-482 (JRT/LIB), 2024 WL 1285779, at *4 (D. Minn. Mar. 26, 2024) (same); *Brown v. Learfield Comm's LLC*, No. 1:23-CV-00374-DAE, 2024 WL 3676709, at *4 (W.D. Tex. June 27, 2024) (where defendant did not intercept communications, observing that "it is impossible for Cowboys Wide Receiver CeeDee Lamb to intercept a ball thrown by his own quarterback i.e. Dak Prescott. Someone else on the defense (for instance, Eagles Cornerback James Bradberry) would have to intercept the pass").

CMHA notes that Plaintiffs try to label the alleged collection of information from pixel technology as an "interception" of information. *E.g.*, Compl. ¶¶ 48, 174-76. But that label does not change the facts alleged about pixel technology. Based on Plaintiffs' allegations about how this technology works, CMHA was a party to data provided by Plaintiffs on its Web Properties and, therefore, is not subject to an ECPA claim.

For these reasons, this Court should follow the decisions of other courts and dismiss Plaintiffs' ECPA claim.

## II. Federal jurisdiction is not supported by CAFA.

### A. The Court should decline CAFA jurisdiction under the mandatory local controversy exception to CAFA.

Without a federal claim upon which to rest federal-question jurisdiction, this Court should assess whether Plaintiffs have properly based jurisdiction on CAFA. *See, e.g.*, *Rodriguez,* 2024 WL 3541582, at *7 (after dismissing ECPA claim, court assessed CAFA jurisdiction, and dismissed case because CAFA jurisdiction was not established). Plaintiffs attempt to invoke CAFA jurisdiction by alleging the amount in controversy exceeds $5,000,000 and that "a significant portion of putative class members are citizens of a state different from the citizenship of at least one Defendant." Compl. ¶ 36; *see* 28 U.S.C. § 1332(d)(2).

Although those allegations provide an initial basis for jurisdiction, upon a challenge to CAFA jurisdiction, the Court must evaluate whether CAFA jurisdiction is proper. If the record demonstrates that "two-thirds or more of the members of all proposed plaintiff classes in the aggregate, and the primary defendants, are citizens

of the State in which the action was originally filed," the Court must decline CAFA jurisdiction under the "mandatory local controversy exception" to CAFA. 28 U.S.C. § 1332(d)(4)(B).[3]

Here, Plaintiffs make no allegations concerning the citizenship of class members. At the same time, CMHA has provided evidence that more than two-thirds of the members of Plaintiffs' proposed class are likely citizens of North Carolina and the mandatory local controversy exception should apply. The most specific evidence on this point is CMHA's evidence that members of the proposed class who have established MyAtriumHealth patient portal accounts overwhelmingly reside in North Carolina. Rhodes Decl. ¶ 9. That evidence shows that approximately 79% of those class members reside in the state. *Id.*

A party's residence is not the exclusive basis for its citizenship. A person is a citizen of a state if she is a "domiciliary" of that state; that is, if she is both a resident of that state and intends "to remain in the state indefinitely." *Scott v. Cricket Comm'ns, LLC*, 865 F.3d 189, 195 (4th Cir. 2017). Although residency status is not sufficient to completely establish citizenship because it does include individuals' subjective intentions to "remain," courts have held that a practical approach to questions of citizenship is required to assess CAFA's local controversy exception. Such a practical approach does not require proof of class members'

---

[3] CAFA subsection (d)(4) presents two independent circumstances, the existence of either requires the court to decline CAFA jurisdiction because the case reflects a local controversy. Those two circumstances are set forth in (d)(4)(A) and (d)(4)(B). CMHA bases its motion on (d)(4)(B).

subjective intentions beyond demonstrating their state of residence. *See Cook v. S.C. Pub. Serv. Auth.*, No. 6:19-CV-03285-TLW, 2020 WL 869741, at *8 (D.S.C. Jan. 21, 2020) (citing cases).

Courts have thus concluded that where a litigant demonstrates the residency of class members, courts may presume that those class members' states of residency equate to their domiciles and, therefore, their citizenship. *See, e.g.*, *Goldberg v. Skyline Tower Painting Inc.*, No. 1:23-CV-01708-JRR, 2024 WL 1050942, at *10 (D. Md. Mar. 10, 2024); *see also Cook*, 2020 WL 869741 at *8. For example, in *Goldberg v. Skyline Tower Painting, Inc.*, the district court held that it was more likely than not that two-thirds of a proposed class were citizens of Maryland for purposes of determining whether the mandatory local controversy exception to CAFA applied. 2024 WL 1050942, at *10. In reaching that conclusion, the district court relied on affidavit testimony that showed that 83.87% of class members listed their residence as the state of Maryland. *Id.* at *9-10.

The district court in *Cook* took a similar approach in deciding whether the "discretionary local controversy exception" to CAFA applied. 2020 WL 869741 at *8. That exception considers whether one-third of class members are citizens of the local state. 28 U.S.C. § 1332(d)(3). The district court concluded that the evidence showed that more than one-third of class members were South Carolina citizens based on a showing that class members' utility billing addresses were in South Carolina. *Cook*, 2020 WL 869741 at *8. Following the precedent of these decisions,

this Court should conclude that more than two-thirds of the class members with MyAtriumHealth patient portal accounts are citizens of North Carolina.

Plaintiffs' proposed class, however, seeks to include *any* individual who has used CMHA's Web Properties, not just those who have established patient portal accounts. Compl. ¶ 301. The citizenship of that segment of Plaintiffs' proposed class is more difficult to determine because that segment includes any individual who used CMHA's Web Properties for any purpose. At the same time, the nature of the issues involved in this case are ones that would indicate that the citizenship makeup of that segment of the class would not be substantially different than those who are patient portal accountholders.

The purpose of CMHA's Web Properties is to provide information about the health care services that CMHA offers and the health care providers that deliver those services. That information relates to CMHA's facilities and providers who are overwhelmingly located in the state of North Carolina. Not surprisingly, it is CMHA's experience that individuals who use its Web Properties, irrespective of whether they have a portal account, are located in and around CMHA's facilities. Holloway Decl. ¶ 8. In fact, both Plaintiffs assert that they used the Web Properties while they were residents of North Carolina. *See* Compl. ¶¶ 31-32, 43, 65.

That non-account holding class members are likely citizens of North Carolina is also consistent with the notion that the nature of health care is "local," i.e., persons seeking information about health care typically seek care available near where they live. *See* Holloway Decl. ¶ 8. It is also consistent with CMHA's

experience that individuals land on CMHA's Web Properties because the Internet search engines they use include CMHA's Web Properties in search results due to the proximity of CMHA's facilities to the individual searching. *Id.*

Accordingly, the segment of the proposed class who are not patient portal accountholders is likely to be composed substantially of North Carolina residents as well. Thus, even if the Court cannot be certain about the citizenship of this segment of class members, it can reasonably conclude that the citizenship of individuals in this segment is unlikely to alter the overall citizenship mix in a way that changes whether the mandatory local controversy exception to CAFA applies. For these reasons, the Court should conclude that two-thirds of Plaintiffs' proposed class is composed of North Carolina citizens, the mandatory local controversy exception of 28 U.S.C. § 1332(d)(4) applies, and CAFA does not support jurisdiction.

### B. The Court should decline CAFA jurisdiction under the discretionary local controversy exception to CAFA.

Even if this Court could not conclude that two-thirds of the class are North Carolina citizens, it should nevertheless apply the "discretionary local controversy exception" provided by 28 U.S.C. § 1332(d)(3). That provision authorizes the Court to decline CAFA jurisdiction where more than one-third but less than two-thirds of the members of the proposed class are citizens of the local state.

In deciding whether to apply the discretionary local controversy exception to CAFA, the Court must consider six factors:

(1) whether the claims involve matters of national or interstate interest;

(2) whether the claims are governed by local state law;

(3) whether the action was brought in a forum with a nexus to class members, the alleged harm, or the defendants;

(4) whether the claims were pleaded to avoid federal jurisdiction;

(5) whether the number of local class members is substantially larger than any other state and the citizenship of other states is dispersed among the class; and

(6) whether in the three years prior, a proposed class action asserting similar claims was filed in the local forum.

*See* 28 U.S.C. § 1332(d)(3)(A)-(F).

Each of these factors is neutral to or favors declining CAFA jurisdiction. Assessing the first factor, nothing in this case appears to present matters of national or interstate interest. Assessing the second factor, except for the ECPA claim, Plaintiffs' claims are governed by state law. The third factor, whether there is a nexus between the parties and the forum, favors declining jurisdiction because there is a nexus between the North Carolina state court forum, the class members, and the defendant. The fourth factor, whether claims were pleaded to avoid federal jurisdiction, does not apply.

The fifth factor, whether the number of class members of the local state is substantially larger than other states, favors declining jurisdiction. North Carolina citizens may compose upwards of 79% of the class. Rhodes Decl. ¶ 9; Holloway Decl. ¶ 8. The remaining class members are dispersed among numerous other jurisdictions, with no U.S. state representing more than 11% of the class. *See*

Rhodes Decl. ¶ 9. Finally, the sixth factor, whether a similar case has been filed in the local forum favors declining jurisdiction because on April 4, 2023, a plaintiff filed an action in the North Carolina Superior Court that was designated to the North Carolina Business Court (which plaintiff dismissed without prejudice) asserting nearly identical claims. *See generally* Complaint, *Rorie v. The Charlotte-Mecklenburg Hosp. Auth.*, Case No. 23-CVS-6166, ECF No. 3 (N.C. Super. Ct. Apr. 4, 2023), attached as **Exhibit 3**.

Thus, even if the Court did not apply the mandatory local controversy exception, it is virtually certain that at least one-third of the members of the proposed class are North Carolina citizens and, therefore, the Court should exercise its discretion to decline CAFA jurisdiction. *See Cook*, 2020 WL 869741, at *8 (remanding case to state court pursuant to section 1332(d)(3)).

## III. The Court should decline to exercise supplemental jurisdiction over the remaining state-law claims.

Under 28 U.S.C. § 1367(c), when circumstances set forth in that statute exist, this Court may, in its discretion, decline to exercise supplemental jurisdiction over state-law claims and dismiss them. 28 U.S.C. § 1367(c)(3); *see Shanaghan v. Cahill*, 58 F.3d 106, 109 (4th Cir. 1995) (discretion to dismiss action initially filed in federal court); *Hinson v. Norwest Fin. S.C., Inc.*, 239 F.3d 611, 617 (4th Cir. 2001) (discretion to remand case removed to federal court). More specifically, the Court, upon consideration of the "convenience and fairness to the parties, the existence of any underlying issues of federal policy, comity, and considerations of judicial economy," may decline jurisdiction if:

(1) the claim raises a novel or complex issue of state law,

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,

(3) the district court has dismissed all claims over which it has original jurisdiction, or

(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c); *Henderson*, 102 F.4th at 251.

This case presents two circumstances that support a decision to decline jurisdiction over state-law claims. First, granting CMHA's Motion means that the Court will have dismissed all claims over which it had original jurisdiction. 28 U.S.C. § 1367(c)(3). Where the court has "[e]liminat[ed] all federal claims before trial[,] [that] generally suffices for a federal court to decline supplemental jurisdiction over pendent state-law claims." *Rodriguez*, 2024 WL 3541582, at *6 (declining supplemental jurisdiction after dismissing ECPA claim in pixel technology case); *see Henderson*, 102 F.4th at 251 (holding that court should decline jurisdiction over remaining state-law claims when federal claims were dismissed).

Second, Plaintiffs' claims raise novel and complex theories of state tort and contract liability that should be addressed by a state tribunal. *See* 28 U.S.C. § 1367(c)(1). Plaintiffs' state-law theories have never before been tried. They seek to expand North Carolina common-law claims to conduct in conflict with federal agency guidance, including guidance partially vacated by other courts. They also seek to retrospectively apply federal agency guidance to conduct that occurred before that guidance was issued.

Moreover, Plaintiffs' common-law claims, in purpose, seek to fashion a civil remedy for pixel technology use even as North Carolina's General Assembly (in contrast to other jurisdictions) has not provided a statutory remedy that might apply to the supposed use of data collected through Internet browsing. These are precisely the kinds of claims that the North Carolina General Assembly has expressed a desire to have adjudicated in the State's specialized North Carolina Business Court. By statute, if Plaintiffs' claims were refiled in state court, their case would be adjudicated by the Business Court because the claims involve the use of "information technology and systems" and "data and data security" for which the amount in controversy is alleged to be at least $5,000,000. N.C. Stat. § 7A-45.4(a)(5), (b)(2). Plaintiffs' novel, complex theories of liability are precisely the kinds of legal issues that Plaintiffs should pursue in state court. *See, e.g.*, *Arrington v. City of Raleigh*, 369 F. App'x 420, 423 n.2 & 424 (4th Cir. 2010) (remanding case based on novel and complex issue and noting that "[a] decision or ruling in this case could well bring waves of consequences to other North Carolina . . . entities"); *see also Simpson v. StoneMor GP, LLC*, No. 3:23-CV-00217-KDB-SCR, 2024 WL 1340561, at *10 (W.D.N.C. Mar. 28, 2024).

Finally, interests of judicial economy support the dismissal of Plaintiffs' common-law claims in favor of state court. A case raising similar claims against another North Carolina health care provider on a class basis is now pending in the North Carolina Business Court. *See Weddle v. WakeMed Health and Hosps.*, No. 22 CVS 13860, 2023 WL 8369786 (N.C. Super. Ct. Dec. 4, 2023). If Plaintiffs were to

refile their case, that court would address Plaintiffs' issues while addressing similar issues in that case. Dismissing Plaintiffs' claims in favor of state court would conserve judicial resources and avoid inconsistent judicial outcomes.

For all of these reasons, the Court should decline supplemental jurisdiction over Plaintiffs' state-law claims.

## IV. Even if the Court retains jurisdiction over the Plaintiffs' unjust-enrichment claim, that claim should be dismissed.

If the Court denies CMHA's Motion to dismiss this case on jurisdictional grounds, it should dismiss Plaintiffs' unjust-enrichment claim. For Plaintiffs to state a claim for unjust enrichment, they must plausibly assert that Plaintiffs and CMHA had an expectation that Plaintiffs would be compensated for the benefit supposedly conferred—namely, the use of information users provided to CMHA while using CMHA's Web Properties. *See Regency Ctrs. Acquisition, LLC v. Crescent Acquisitions, LLC*, No. 17 CVS 11354, 2018 WL 562749, at *10 (N.C. Super. Ct. Jan. 24, 2018) (to plead unjust enrichment, a plaintiff must show that "both parties understood that services were rendered with the expectation of payment"); *Weddle*, 2023 WL 8369786, at *5-6 (same). Here, Plaintiffs make no allegations that reflect an expectation by Plaintiffs or CMHA that Plaintiffs would be compensated for information collected by tracking technologies used on CMHA's Web Properties. *See* Compl. ¶ 213. To the contrary, Plaintiffs' allegations assert that Plaintiffs provided the information at issue not in exchange for compensation of some kind but "[a]s a condition of receiving [CMHA's medical] services." *Id.* ¶¶ 40, 62.

On similar facts, the North Carolina Business Court held that a plaintiff failed to state a claim. *Weddle*, 2023 WL 8369786, at *6. In that case, the plaintiffs asserted that health care provider WakeMed was unjustly enriched because it used information gathered through the Meta Pixel without the plaintiffs' consent. *Id.* The plaintiffs in that case, however, asserted that they provided the pixel-developed information to the defendant "in exchange for medical services." *Id.*; *cf.* Compl. ¶¶ 40, 62. Because that allegation meant that the plaintiffs had no expectation of compensation for the use of that information, the court held that the plaintiffs failed to state an unjust-enrichment claim. *Weddle*, 2023 WL 8369786, at *6. This Court should follow the decision in *Weddle* and dismiss Plaintiffs' unjust-enrichment claim. *See also Allen,* 2023 WL 5486240, at *3 (dismissing unjust-enrichment claim against health care provider based on use of Meta Pixel).

## CONCLUSION

For the reasons set forth above, the Court should dismiss Plaintiffs' ECPA claim with prejudice; find it lacks jurisdiction under CAFA or decline jurisdiction under CAFA; and decline supplemental jurisdiction over Plaintiffs' state-law claims and dismiss them without prejudice. If the Court does not dismiss Plaintiffs' state-law claims, it should dismiss Plaintiffs' unjust-enrichment claim with prejudice.

This the 26th day of August, 2024.

**ROBINSON, BRADSHAW & HINSON, P.A.**

/s/ Jonathan C. Krisko

Jonathan C. Krisko
N.C. State Bar No. 28625
Jordan T. DeJaco
N.C. State Bar No. 57866
101 North Tryon Street, Suite 1900
Charlotte, North Carolina 28246
Telephone: (704) 377-2536
jkrisko@robinsonbradshaw.com
jdejaco@robinsonbradshaw.com

Preetha Suresh Rini
N.C. State Bar No. 51022
434 Fayetteville Street, Suite 1600
Raleigh, North Carolina 27601
Telephone: (919) 239-2600
prini@robinsonbradshaw.com

*Attorneys for Defendant The Charlotte-Mecklenburg Hospital Authority*

## ARTIFICIAL INTELLIGENCE CERTIFICATION

Pursuant to the Court's June 18, 2024 Order, 3:24-mc-104, I hereby certify that:

- No artificial intelligence was employed in doing the legal research for the preparation of this document, with the exception of such artificial intelligence embedded in standard on-line legal research sources such as Westlaw, Lexis, FastCase, and Bloomberg; and

- Every statement and every citation to an authority contained in this document has been checked by an attorney at this firm and/or paralegal working at their direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

This the 26th day of August, 2024.

/s/ Jonathan C. Krisko
Jonathan C. Krisko