# UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF NORTH CAROLINA
# CHARLOTTE DIVISION

JULIE ROBERTS AND JUDITH SIGMON, *individually and on behalf of all others similarly situated*,

Plaintiffs,

vs.

THE CHARLOTTE-MECKLENBURG HOSPITAL AUTHORITY (d/b/a ATRIUM HEALTH),

Defendant.

Case No.: 3:24-cv-00382-KDB-SCR

## MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO DISMISS THIRD AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(B)(1) AND PARTIAL MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6)


**THE VAN WINKLE LAW FIRM**
David M. Wilkerson
11 N Market Street
Ashville, NC 28801
(828) 258-2991
dwilkerson@vwlawfirm.com

**ALMEIDA LAW GROUP LLC**
David S. Almeida*
Britany A. Kabakov*
849 W. Webster Avenue
Chicago, Illinois 60614
(312) 576-3024
david@almeidalawgroup.com
britany@almeidalawgroup.com

**PEIFFER WOLF CARR KANE CONWAY & WISE, LLP**
Brandon M. Wise*
One US Bank Plaza,
Suite 1950
St. Louis, MO 63101
(314) 833-4825
bwise@peifferwolf.com

Andrew R. Tate*
235 Peachtree St. NE,
Suite 400
Atlanta, GA 30303
(404) 282-4806
atate@peifferwolf.com

* admitted *pro hac vice*

*Counsel for Plaintiffs & the Class*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........ iii

INTRODUCTION ........ 1

FACTUAL BACKGROUND ........ 4

A. The Disclosure of Plaintiffs' Private Information ........ 4

B. Defendant Violated its Privacy Policies by Disclosing Plaintiffs' Private Information without Consent. ........ 5

C. The HHS Guidance has been Vacated only in part in a Manner that does not Affect Plaintiffs' Allegations. ........ 5

LEGAL STANDARDS ........ 7

ARGUMENT ........ 8

1. Plaintiffs Plausibly Allege their ECPA Claim. ........ 8

A. Plaintiffs Allege that an Interception Occurred through the Meta and Google Collection Tools ........ 8

B. The Cases Defendant Relies on are Inapposite. ........ 11

C. The One-Party Exception Does Not Apply Because Plaintiffs Allege that CMHA Committed a Crime or Tort. ........ 13

D. Factual Questions should not be Resolved on a Motion to Dismiss. ........ 16

2. Plaintiffs State a Plausible Claim for Unjust Enrichment. ........ 17

3. This Court has Subject Matter Jurisdiction Over the Claims at Issue. ........ 19

CONCLUSION ........ 20

**TABLE OF AUTHORITIES**

**Cases** **Pages**

*A.D. v. Aspen Dental Mgmt. Inc.*,
2024 WL 4119153 (N.D. Ill. Sept. 9, 2024) ........ 2

*Allen v. Novant Health, Inc.*,
2023 WL 5486240 (M.D.N.C. Aug. 24, 2023) ........ 11-12

*American Hospital Association v. Becerra*,
2024 WL 3075865 (N.D. Tex. June 20, 2024) ........ 6-7

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........ 8

*B.K. v. Desert Care Network*,
2024 WL 1343305 (C.D. Cal. Feb. 1, 2024) ........ 2

*Brown v. Google LLC*,
2021 WL 6064009 (N.D. Cal. Dec. 22, 2021) ........ 19

*Brown v. Learfield Comm's LLC*,
2024 WL 3676709 (W.D. Tex. June 27, 2024) ........ 13

*Cooper v. Mount Sinai Health Systems, Inc.*,
2024 WL 3586357 (S.D.N.Y. July 30, 2024) ........ 4, 11, 15-16

*Deteresa v. Am. Broadcasting Cos., Inc.*,
121 F.3d 460 (9th Cir. 1997) ........ 14

*Doe v. Boone Health, Inc.*,
2023 WL 4996117 (Mo.Cir. July 20, 2023) ........ 18

*Doe v. Emerson Hospital*,
2023 WL 8869624 (Mass.Super. Nov. 22, 2023) ........ 18

*Doe v. Main Line Fertility, Ltd.*,
2024 WL 1829564 (Pa.Com.Pl. Jan. 17, 2024) ........ 18

*Doe v. Regents of Univ. of California*,
672 F. Supp. 3d 813 (N.D. Cal. 2023) ........ 2

*Doe v. Smith*,
429 F.3d 706 (7th Cir. 2005) ........ 17

*Doe v. Tenet Healthcare Corp.*,
2024 WL 1756075 (D. Mass. Apr. 23, 2024) .................................................................. 18

*Gay v. Garnet Health*,
2024 WL 4203263 (S.D.N.Y. Sept. 16, 2024) .................................................................. 2

*Green v. Brock & Scott, PLLC*,
2020 WL 3404740 (W.D.N.C. June 19, 2020) ................................................................ 20

*In re BPS Direct, LLC*,
705 F. Supp. 3d 333 (E.D. Pa. 2023) .......................................................................... 9

*In re Facebook, Inc. Internet Tracking Litig.*,
956 F.3d 589 (9th Cir. 2020) ....................................................................................... 10

*In re Google Inc. Cookie Placement Consumer Privacy Litigation*,
806 F.3d 125 (3d Cir. 2015) .......................................................................................... 9

*In re Grp. Health Plan Litig.*,
2023 WL 8850243 (D. Minn. Dec. 21, 2023) ............................................................ 2, 16

*JPMorgan Chase Bank, National Ass'n v. Browning*,
230 N.C. App. 537 (2013) ........................................................................................... 17

*In re Meta Pixel Healthcare Litig.*,
647 F. Supp. 3d 778 (N.D. Cal. 2022) ...................................................................... 1-2

*Kane v. Univ. of Rochester*,
2024 WL 1178340 (W.D.N.Y. March 19, 2024) ........................................................ 2, 15

*Kurowski v. Rush System for Health*,
683 F. Supp. 3d 836 (N.D. Ill. 2023) ........................................................................ 13

*Kurowski v. Rush Sys. for Health*,
2023 WL 8544084 (N.D. Ill. Dec. 11, 2023) ............................................................ 2, 16

*Kurowski v. Rush Sys. for Health*,
2024 WL 3455020 ....................................................................................................... 13

*McCulley. v. Banner Health*,
No. 23-CV-00985-PHX-SPL (D. Ariz. June 21, 2024) ..................................................... 2

*Mekhail v. N. Mem'l Health Care*,
2024 WL 1332260, (D. Minn. Mar. 28, 2024) ..................................................... 2, 13, 17

*M.R. v. Salem Health Hospitals and Clinics*,
2024 WL 3970796 (D. Or. Aug. 28, 2024) .......... 2

*Naugle v. Duke Univ. Health Sys., Inc.*,
2024 WL 1307216 (M.D.N.C. Mar. 27, 2024) .......... 12

*Nienaber v. Overlake Hospital Medical* Center,
2024 WL 2133709 (W.D. Wash. May 13, 2024) .......... 12

*Ocampo v. LifeBridge Health, Inc.*,
2023 WL 9853267 (Md.Cir.Ct. Dec. 07, 2023) .......... 18

*Okash v. Essentia Health*,
2024 WL 1285779 (D. Minn. Mar. 26, 2024) .......... 13

*R.C. v. Walgreen Co.*,
2024 WL 2263395 (C.D. Cal. May 9, 2024) .......... 2

*Robertson v. Sea Pines Real Estate Cos.,*
679 F.3d 278 (4th Cir. 2012) .......... 8

*Rodriguez v. FastMed Urgent Care, P.C*,
2024 WL 3541582 (E.D.N.C. July 24, 2024) .......... 11

*Smith v. Loyola University Med. Ctr*,
2024 WL 3338941 (N.D. Ill., July 9, 2024) .......... 2

*Sweat v. Houston Methodist Hosp.*,
2024 WL 3070184 (S.D. Tex. June 20, 2024) .......... 2

*Stratifyd, Inc. v. Wang*,
2023 WL 6406426 (W.D.N.C. Sept. 29, 2023) .......... 17

*Ultimate Outdoor Movies, LLC v. FunFlicks, LLC*,
2019 WL 2233535 (D. Md. May 23, 2019) .......... 12

*Williams v. Dukehealth*, 2024 WL 898051 (M.D.N.C. Mar. 1, 2024) .......... 12

*Weddle v. WakeMed Health and Hospitals*,
2023 WL 8369786 (N.C. Super. Dec. 4, 2023) .......... 4, 19

**<u>Statutes</u>** **<u>Pages</u>**

Electronic Communication Privacy Act .................................................................. *passim*

Health Insurance Portability and Accountability Act of 1996 .............................................*passim*

**<u>Other Authority</u>** **<u>Pages</u>**

45 C.F.R. § 160.103 ........................................................................................................ 14

FED. R. CIV. P. 12(b)(6) ............................................................................................... 8, 17

FED. R. CIV. P. 12(b)(6) .................................................................................................... 8

FED. R. CIV. P. 15(a)(2) .................................................................................................. 20

# INTRODUCTION

Defendant, The Charlotte-Mecklenburg Hospital Authority d/b/a Atrium Health ("CMHA" or "Defendant"), through its motion to dismiss, does ***not*** deny using tracking tools—including the Meta Pixel—to collect its patients' personally identifiable information ("PII"), protected health information ("PHI," and with PII, "Private Information") and individually identifiable health information ("IIHI"). CMHA simultaneously divulged that federally protected information to unauthorized third parties Meta, Google and other digital media platforms without consent. In the Third Amended Class Action Complaint ("Complaint"),[1] Plaintiffs detail how CMHA's conduct is expressly proscribed by the Health Insurance Portability and Accountability Act of 1996 ("HIPAA"), Pub. L. No. 104-191, 110 Stat. 1936 (1996).[2]

CMHA attempts to avoid judicial scrutiny by trivializing the severity and import of its use of tracking technologies to divulge its patients' Private Information as merely "common place marketing tools and technology." *See* Motion to Dismiss ("MTD"), ECF No. 39, at 6. But the issue is not whether the tracking tools CMHA used were commonplace.[3] Where a covered entity, like CMHA, intentionally discloses patients' IIHI, HIPAA makes such conduct a crime. *See, e.g.*, *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 797 (N.D. Cal. 2022) ("The existence of a

---

[1] All paragraph citations herein are to the Third Amended Complaint, ECF No. 35. Plaintiffs' specific medical conditions are included in the unredacted, sealed Complaint, ECF No. 37, but not referenced herein to protect their privacy and the sensitivity of their conditions.

[2] Plaintiffs also detail the U.S. Department of Health and Human Services' Office of Civil Rights' Bulletin (the "HHS Bulletin") and the Federal Trade Commission's Guidance regarding how tracking technologies that disclose PHI may violate HIPAA. *See, e.g.*, ¶¶ 18-19 & 245-47.

[3] Facebook's tracking and data collection tools include the Meta Pixel, Meta SDK, Meta Conversions API, customer list uploads, social plug-ins, the Meta Graph API, server-to-server transmissions and similar collection tools ("Meta Collection Tools"). The Google tracking and collection tools include Google Analytics, Google Tag Manager, DoubleClick, social plug-ins, server-to-server transmissions and similar collection tools ("Google Collection Tools").

lawful purpose does not sanitize an interception that was also made for an illegitimate purpose."). The information Defendant collected and disclosed was *not* hypothetical nor anonymized but rather included Plaintiffs' specific health information such as their medical symptoms, conditions, treatments sought and identification of their treating physicians. Additionally, the trackers recorded and disclosed button/menu selections and content typed into text boxes by Plaintiffs and other patients. *See, e.g.*, ¶¶ 57 & 80; *see also Doe v. Regents of Univ. of California*, 672 F. Supp. 3d 813, 820 (N.D. Cal. 2023) ("Personal medical information is understood to be among the most sensitive information that could be collected about a person[.]").

Despite the plethora of trial court decisions denying nearly identical requests to dismiss claims under the Electronic Communication Privacy Act ("ECPA"), CMHA nonetheless demands dismissal of that claim arguing that because it consented to the communication, the one-party exemption forecloses liability. *See* MTD at 17.[4] But Plaintiffs' ECPA claim should not be

---

[4] *But see, e.g.*, *Gay v. Garnet Health*, 2024 WL 4203263, at *4 (S.D.N.Y. Sept. 16, 2024) (denying motion to dismiss ECPA claim "based around criminal or tortious use of private and protected data relating to patient's medical care"); *A.D. v. Aspen Dental Mgmt. Inc.*, 2024 WL 4119153, at *3 (N.D. Ill. Sept. 9, 2024) ("*Aspen Dental*") (similar); *M.R. v. Salem Health Hospitals and Clinics*, 2024 WL 3970796, at *5 (D. Or. Aug. 28, 2024) (similar); *Smith v. Loyola University Med. Ctr*, 2024 WL 3338941, at *7 (N.D. Ill., July 9, 2024) (same); *McCulley. v. Banner Health*, No. 23-CV-00985-PHX-SPL (D. Ariz. June 21, 2024) (denying motion for reconsideration of the May 10, 2024 Order wherein the court upheld plaintiff's ECPA claim); *Sweat v. Houston Methodist Hosp.*, 2024 WL 3070184, at *3-4 (S.D. Tex. June 20, 2024) (finding crime-tort exception applies for disclosure of IIHI); *R.C. v. Walgreen Co.*, 2024 WL 2263395 (C.D. Cal. May 9, 2024) (denying motion to dismiss ECPA claim and common law claims for invasion of privacy and unjust enrichment); *Mekhail v. N. Mem'l Health Care*, 2024 WL 1332260, at *5 (D. Minn. Mar. 28, 2024) (similar); *Kane v. Univ. of Rochester*, 2024 WL 1178340 (W.D.N.Y. March 19, 2024) (allegations that website discloses information that could identify the user who scheduled the appointment and the provider was sufficient); *B.K. v. Desert Care Network*, 2024 WL 1343305, at *6 (C.D. Cal. Feb. 1, 2024) (finding similar); *In re Meta Pixel Healthcare Litig.*, 647 F. Supp. 3d 778, 797 (N.D. Cal. Dec. 22, 2022) (explaining that "plaintiffs may be able to show that the crime-tort exception applies" based on allegations "that the use of patient data for advertising in the absence of express written consent is criminal and tortious"); *In re Grp. Health Plan Litig.*, 2023 WL 8850243 (D. Minn. Dec. 21, 2023) (similar); *Kurowski v. Rush Sys. for Health*, 2023 WL 8544084, at *3 (N.D. Ill. Dec. 11, 2023).

dismissed because the Amended Complaint alleges that CMHA had an independent criminal or tortious purpose to violate both federal law—HIPAA—and state law, thereby bringing this case within the "crime-tort exception." *See, e.g.*, ¶¶ 332-43; *see also, e.g.*, *Cooper v. Mount Sinai Health Systems, Inc.*, 2024 WL 3586357, at **7-11 (S.D.N.Y. July 30, 2024) (finding that knowing disclosure of IIHI satisfies crime-tort exception & stating that the operative complaint "plausibly alleges that Mount Sinai knowingly disclosed individually identifiable health information to Pixel Information Recipients and thereby violated HIPAA."). By installing the tracking technologies at issue here in a manner that disclosed sensitive health information, CMHA intentionally put its profits over the privacy rights of its patients. Moreover, the cases that Defendant relies on to the contrary are readily distinguishable. *Compare* MTD at 8, *with, infra,* § 1(B).

Plaintiffs' claim for unjust enrichment survives dismissal because unlike in *Weddle v. WakeMed Health and Hospitals*, 2023 WL 8369786 (N.C. Super. Dec. 4, 2023), Plaintiffs here allege that they paid for medical services in which their PHI would be kept confidential. Specifically, Plaintiffs allege that they would have paid less for those healthcare services if they had known that Defendant would share their PHI with Big Tech companies, and that Defendant's monetization of their PHI under these circumstances conferred a benefit on Defendant for which Plaintiffs received no compensation. *Compare* MTD at 24-25, *with*, *infra,* § 2. In short, Plaintiffs have pled plausible claims for relief and thus the motion to dismiss should be denied in its entirety.

Finally, with a federal claim—the ECPA—to support federal question jurisdiction, the Court need not consider the applicability of either the mandatory or discretionary local controversy exceptions to diversity jurisdiction by virtue of the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d).

## FACTUAL BACKGROUND

### A. The Disclosure of Plaintiffs' Private Information.

Plaintiff Julie Roberts is a former North Carolina resident and patient of CMHA between September 2007 and 2011 and September 2020 and October 2023. *See* ¶¶ 30-31. Like many patients, Plaintiff Roberts used CMHA's website, available at https://atriumhealth.org/ (the "Website"), and its patient portal, available at https://my.atriumhealth.org/myatriumhealth (the "Portal" and collectively with the Website, the "Web Properties"). ¶ 30. Plaintiff Roberts used the Website to research doctors, submit information about her conditions and treatments, schedule appointments, review test results and locate Defendant's locations close to her home. ¶¶ 43-44. Plaintiff Roberts also used the Portal to review her medical records and doctor's notes. ¶ 50. Plaintiff Roberts reasonably expected that her communications with CMHA via its Web Properties were confidential, solely between herself and Defendant, and that such communications would not be transmitted to, or intercepted by, a third party. ¶ 53. But shortly after submitting her PHI, Plaintiff Roberts began to receive spam and ads on Facebook and other social media related to her medications and prescriptions. ¶ 46. Ultimately, Plaintiffs Roberts alleges that she would not have utilized Defendant's medical services, used its Web Properties or would have paid much less for Defendant's services had she known that her Private Information would be captured and disclosed to third parties like Facebook without her consent. ¶ 60.

Plaintiff Judith Sigmon is a current North Carolina resident and has been a patient of CMHA since 2007. ¶¶ 32-33. Plaintiff Sigmon used Defendant's Web Properties since the date the Portal was introduced. ¶ 33. Plaintiff Sigmon used Defendant's Website to research her medical conditions, schedule appointments, research doctors, understand test results, upload insurance information and location Defendant's locations close to her home. ¶¶ 65. Plaintiff Sigmon also

used Defendant's Portal to review her medical records and doctor's notes. ¶ 74. Plaintiff Sigmon reasonably expected that her communications with Defendant via its Web Properties were confidential, solely between herself and Defendant and that such communications would not be transmitted to or intercepted by a third party. ¶ 76. Like Plaintiff Roberts, Plaintiff Sigmon began to receive spam and ads on Facebook and other social media related to her specific health conditions, shortly after using the password-protected Portal. ¶ 66.

### B. Defendant Violated its Privacy Policies by Disclosing Plaintiffs' Private Information without Consent.

Plaintiffs never consented to CMHA disclosing their PHI and IIHI to third parties, such as Facebook and Google. *See, e.g.*, ¶¶ 24, 65-69 & 79-82. Instead, Defendant violated its own privacy policies and online representations that promised Plaintiffs their personal information would remain secure and protected. ¶¶ 206-14. For example, Defendant represents that it will only disclose Private Information under certain circumstances, none of which apply here. ¶ 207. Defendant's privacy policies do not permit Defendant to use nor disclose Plaintiffs' Private Information for marketing, stating "we do not sell your information or get paid by vendors to communicate with you without your written authorization." ¶¶ 207-208. Further Defendant, in a separate online representation, states that it "will not sell your Personal Information without your express permission." ¶ 211. Notwithstanding, Defendant partnered with third party platforms to use tracking technologies, including configured them on its Website to surreptitiously obtain and disclose Plaintiffs' PHI and IIHI for criminal, tortious, and marketing purposes.

### C. The HHS Guidance has been Vacated only in part in a Manner that does not Affect Plaintiffs' Allegations.

CMHA next contends that it had absolutely no idea that it should not—in direct contravention of its privacy policy—collect and disclose its patients' Private Information without

their consent until the Office for Civil Rights at the United States Department of Health and Human Services ("HHS") promulgated its Use of Online Tracking Technologies by HIPAA Covered Entities and Business Associates Guidance ("Guidance"). *See* MTD at 12 (stating that HHS "had not promulgated any regulatory pronouncement, rule, or other communication that addressed how regulated entities might use tracking technologies"). Companies, like Defendant, that secretively use tracking technologies on their web properties to collect and to divulge IIHI and PHI without informed consent want to make it appear as if the HHS Guidance and its prohibitions suddenly appeared out of thin air.

But, and to be clear, HHS specified in its Guidance that it was ***not*** announcing new laws, rules, or policies, but was merely "highlight[ing] the obligations" of covered entities "under the HIPAA Privacy, Security, and Breach Notification Rules . . ."[5] The HHS Guidance further explained, "[w]hile it has ***always been true*** that regulated entities may not impermissibly disclose PHI to tracking technology vendors, because of the proliferation of tracking technologies collecting sensitive information, OCR is providing this reminder that it is critical for regulated entities to ensure that they disclose PHI **only** as expressly permitted or required by the HIPAA Privacy Rule."[6]

Nevertheless, CMHA argues that the HHS Guidance has been vacated for purposes relevant here. In June 2024, the United States District Court for the Northern District of Texas issued an opinion in *American Hospital Association v. Becerra*, 2024 WL 3075865 (N.D. Tex. June 20, 2024) ("*AHA*") reaffirming the HHS Guidance in part and vacating one discrete aspect

[5] *See* Use of Online Tracking Technologies by HIPAA Covered Entities and Business Associates, https://www.hhs.gov/hipaa/for-professionals/privacy/guidance/hipaa-online-tracking/index.html (last updated June 26, 2024)

[6] *Id.* (emphasis added).

not applicable to this case. Judge Pittman held that HHS exceeded its authority by issuing guidance prohibiting healthcare providers from utilizing "an online technology" that discloses (i) an individual's IP address along with (ii) a visit to an unauthenticated public webpage addressing specific health conditions or healthcare providers. *Id.* at *2. Further, Judge Pittman labeled this "new rule" as the "Proscribed Combination." *Id.*

As the Court was careful to note, the opinion concerned *only* the "Proscribed Combination." *Id.* at *17, n. 8 ("Such vacatur is not intended to, and should not be construed as, limiting the legal operability of other guidance in the germane HHS document."). Judge Pittman observed that the HHS guidance "contains an array of guidance for covered entities, much of which is both legally and pragmatically sound." *Id.* at *4, n. 3.

Contrary to Defendant's self-serving interpretation, this case does ***not*** concern the general public's use of unauthenticated public websites and the concomitant disclosure of their IP addresses. Rather, this case challenges CMHA's use of tracking technologies, including the Meta Pixel and Google Collection Tools, to collect and disclose PHI, such as (i) booking online appointments, (ii) accessing medical test results, (iii) reviewing doctor's notes and visit summaries and (iv) uploading insurance information. *See, e.g.*, ¶¶ 43-44, 50, 65 & 74.

The *AHA* decision does not undermine the HHS Guidance prohibiting such disclosures, much less suggest that such disclosures do not violate HIPAA. Indeed, it recognizes that such disclosures *would* reveal PHI and HHS "[c]an and should remind covered entities that the Privacy Rule would apply in those circumstances." 2024 WL 3075865, at *14. Because Plaintiffs' claims are based on long-standing obligations that were not created by the HHS Guidance nor impacted by the *AHA* decision, CMHA's reliance on it is wholly misplaced.

## LEGAL STANDARD

CMHA demands dismissal pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). To withstand a Rule 12(b)(6) motion to dismiss, a complaint must contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This standard does not require inclusion of "detailed factual allegations," rather the complaint must contain facts with enough specificity "to raise a right to relief above the speculative level." *Id.* at 555. In evaluating a motion to dismiss, the Court "must take the complaints' factual allegations as true and draw all reasonable inferences in plaintiffs' favor."

## ARGUMENT

As explained in detail below, Plaintiffs' claims, supported by their well-pled allegations, survive Defendant's motion to dismiss.

### 1. Plaintiffs Plausibly Allege their ECPA Claim.

Plaintiffs contend that CMHA violated the ECPA, which proscribes (a) the *interception* of Plaintiffs' electronic communications, (b) *disclosure* of Plaintiffs' electronic communications and (c) *using* the contents of those electronic communications. *See* ¶¶ 315-31. In response, CMHA claims that the claim falls within the ECPA's party exemption, and that the pixel technology alleged here did not "intercept" information. However, CMHA ignores recent caselaw finding squarely to the contrary, contradicts Plaintiffs' well-pled allegations, and raises factual issues not appropriately resolved at the pleading stage.

#### A. Plaintiffs Allege that an Interception Occurred through the Meta and Google Collection Tools.

The bulk of CMHA's argument with respect to Plaintiffs' ECPA claim is that the Meta and Google Collection Tools, such as the Meta Pixel, should be viewed like standard Internet cookies. *See* MTD at 17-20. CMHA attempts to trivialize the severity of the data collection it performed

via these trackers by contradicting Plaintiffs' allegations in order to shoehorn this case to come within the holding from nearly nine years ago in *In re Google Inc. Cookie Placement Consumer Privacy Litigation*: "Because the defendants were the intended recipients of the transmissions at issue—i.e. GET requests that the plaintiffs' browsers sent directly to the defendants' servers—we agree that § 2511(2)(d) means the defendants have done nothing unlawful under the Wiretap Act." 806 F.3d 125, 142–43 (3d Cir. 2015) ("*In re Google Inc. Cookie Placement*"). This is incorrect for two reasons.

First, the functionality behind traditional cookies and the more advanced pixel technology at issue in this case are substantially different. *See, e.g.*, *In re BPS Direct, LLC*, 705 F. Supp. 3d 333, 344 (E.D. Pa. 2023) (discussing how the Facebook tracking pixel uses first-and third-party cookies). In *In re Google Inc. Cookie Placement* the court explained that "plaintiffs' counsel was directly asked on six separate occasions to clarify what transmissions they believed were improperly acquired and/or how the defendants' cookies functioned. The plaintiffs' counsel did not provide a direct response on any of these occasions." 806 F.3d at 142. As a result, the court concluded that "defendants acquired the plaintiffs' internet history information by way of GET requests that the plaintiffs sent directly to the defendants, and that the defendants deployed identifier cookies to make the information received from GET requests associable and thus trackable." *Id.*

Here, in contrast, Plaintiffs repeatedly allege that CMHA intentionally installed and configured tracking tools, in the form of Meta and Google Collection Tools, on its Web Properties to intercept patients' communications and identities not for treatment purposes but to disclose the content of those communications to third parties without consent. *See, e.g.*, ¶¶ 9, 158, 177 & 203. The Meta Pixel, for instance, accomplishes the interception by contemporaneously redirecting user

communications to Facebook every time someone takes an action on Defendant's Website. *See, e.g.*, ¶¶ 88-109. The Pixel does not just recreate where a user navigates but affirmatively and instantly transmits, essentially, a conversation with Defendant through the Web Properties. *Id*. Likewise, Google's Collection Tools also redirect Patient health information and data from CMHA's Web Properties to Google. ¶¶ 113-31.

Second, a major distinction between *In re Google Inc. Cookie Placement* and this case is who the intended recipient was and whether the crime-tort exception applies. Defendant contends that the fundamental allegations in this case "are the same as *In re Google:* technology installed by CMHA, used by Plaintiffs, collected information Plaintiffs sent to CMHA in communications to which CMHA was a party. CMHA, therefore, did not 'intercept' information and cannot be liable for an ECPA claim." MTD at 18. CMHA, however, is missing one big step in its argument. The fact that CMHA disclosed Plaintiffs' communications to non-parties, Facebook, Google and others without consent and in violation of its own privacy policies. *See, e.g.*, ¶¶ 10, 24 & 206-17. Indeed, HIPAA prohibits healthcare providers from sharing health care information, medical records and related information with third parties except as needed for a patient's treatment, payment ***or with their consent***. ¶¶ 15-16.

Nevertheless, there is a division of authority regarding whether the party exemption even applies when a defendant receives communications via third-party tracking technologies that simultaneously duplicate and forward GET requests. *Compare In re Facebook, Inc. Internet Tracking Litig.*, 956 F.3d 589, 608 (9th Cir. 2020) (finding that simultaneous duplication and forwarding of GET requests does <u>not</u> qualify for the party exemption), *with In re Google Inc. Cookie Placement*, 806 F.3d at 142–43 (explaining that simultaneous duplication and forwarding of GET requests does qualify for the party exemption). But that issue is not implicated here. *See*

*Cooper*, 2024 WL 3586357, at *6 n.7 (explaining the division of authority and finding that the crime-tort exception applies). And even if the Court finds that Defendant was a party to the communication, then as explained below, the crime-tort exception applies and Defendant remains liable. *See, infra,* § 1(C); *see also In re Grp. Health Plan Litig.*, 2023 WL 8850243, at *7-8 (finding the crime-tort exception applies).

**B. The Cases Defendant Relies on are Inapposite.**

The cases CMHA relies on in support of dismissal are easily distinguished here. *See* MTD at 8 & 13-14. To start, in *Rodriguez v. FastMed Urgent Care, P.C.*, the court dismissed plaintiff's ECPA claim without prejudice and incorrectly concluded that because defendant was a party to the communication, it could not violate the ECPA. 2024 WL 3541582, at *4 (E.D.N.C. July 24, 2024). But plaintiff in *Rodriguez*—and here—consented to defendant accessing their PHI, not an unauthorized third party like Facebook and Google. Nevertheless, the *Rodriguez* court concluded that allegations that defendant "intercepted and disclosed the class members' information for commercial use or gain" meant that its purpose was not to commit a crime or tort. *Id*. at *6 (collecting cases). But using medical information for commercial advantage is explicitly disallowed by HIPAA. *See* ¶¶ 240 & 339-40 (citing 42 U.S.C. § 1320d-6) (The penalty for violation is enhanced where "the offense is committed with intent to sell, transfer, or use individually identifiable health information for commercial advantage, personal gain, or malicious harm.").

Likewise, Defendant relies on *Allen v. Novant Health, Inc.*, where instead of grappling with the crime-tort exception, the court concluded that plaintiffs had not stated a claim because they alleged "that Novant received the communication, sent to them directly and specifically by the plaintiffs, and that it was Facebook that intercepted the communication via the pixel." 2023 WL

5486240, at * 4 (M.D.N.C. Aug. 24, 2023). However, the court did not distinguish pixel and cookie technology. Indeed, the holding in *Novant Health* can be further distinguished on the basis that plaintiffs did not include sufficient details to explain how the underlying technology works like a traditional wiretap.[7]

And in *Williams v. Dukehealth*, the court relied on the holding in *Novant Health* finding that the party exemption applied. *See* 2024 WL 898051, at *8-9 (M.D.N.C. Mar. 1, 2024), *report and recommendation adopted sub nom. Naugle v. Duke Univ. Health Sys., Inc.*, 2024 WL 1307216 (M.D.N.C. Mar. 27, 2024). But the court did not independently address the applicability of the crime-tort exception to the ECPA claim under the facts alleged in *Dukehealth* and instead dismissed the claim without prejudice. *Id.* And the second case that *Dukehealth* court relied on, *Ultimate Outdoor Movies, LLC v. FunFlicks, LLC* acknowledged that "[a]s of the termination of the license, Plaintiffs had no right to use any email address at the funflicks.com domain, and have no right to control Defendants' future use of those email addresses, ***unless Defendants' actions violate some other statute or constitute tortious conduct.***" 2019 WL 2233535, at *21 (D. Md. May 23, 2019) (emphasis added).

Finally, the remaining district court cases outside North Carolina that CMHA relies on are similarly inapposite. MTD at 19. In *Nienaber v. Overlake Hospital Medical Center*—from the Western District of Washington—the court dismissed plaintiff's ECPA claim with leave to amend because plaintiff failed "to plead a tortious or criminal use of the acquired communications, separate from the recording, interception, or transmission." 2024 WL 2133709, at *15 (W.D. Wash. May 13, 2024). Here, Plaintiffs have pleaded that Defendant intercepted and shared their

[7] This case settled on a class-wide basis on the eve of this opinion and no motion for reconsideration or appeal was filed. *See In re: Novant Health, Inc.*, 1:22-cv-00697, ECF No. 67.

information with "criminal and/or tortious intent" distinct from the alleged wiretapping, i.e., the violation of HIPAA and the commission of the other torts described in the Amended Complaint.

The holding in *Okash v. Essentia Health* is an outlier in Minnesota. *Compare* 2024 WL 1285779, at *5 (D. Minn. Mar. 26, 2024), *with In re Grp. Health Plan Litig.*, 2023 WL 8850243 (D. Minn. Dec. 21, 2023) (denying motion to dismiss ECPA claim); *Mekhail*, 2024 WL 1332260, at *5 (same). There, the court relied on an outdated analysis in *Kurowski v. Rush System for Health*, 683 F. Supp. 3d 836, 844 (N.D. Ill. 2023). But since then, the *Kurowski* court both held that plaintiff's amended complaint was "sufficient to invoke the HIPAA exception-to-the-party-exception" and denied a motion for judgment on the pleadings on the same issue. *See* 2023 WL 8544084, at *3 (granting leave to amend) & 2024 WL 3455020, at *6 (concluding "that Kurowski has plausibly alleged that Rush acted with the conscious desire to knowingly make unauthorized disclosures of her IIHI to Facebook, Google, and Bidtellect for purposes of invoking the crime-or-tort exception. As a result, Rush is not entitled to judgment as a matter of law on her Wiretap Act claim."). And even after *Okash*, the court in *Mekhail* concluded that plaintiff's "allegations sufficiently plead an interception made with the purpose of violating one or more laws, independent from the act of interception itself." 2024 WL 1332260, at *5 (emphasis added).[8]

### C. The One-Party Exception Does Not Apply Because Plaintiffs Allege that CMHA Committed a Crime or Tort.

Without addressing the crime-tort exception, CMHA asserts that "[i]f the defendant was a party to the communication, the defendant could not have "intercepted" the communication and

[8] The remaining case Defendant relies on did not concern medical information, so there was no violation of HIPAA and no application of the crime-tort exception. *See Brown v. Learfield Comm's LLC*, 2024 WL 3676709, at *4 (W.D. Tex. June 27, 2024). Indeed, the court in *Brown* recognized that its analysis could differ, and the crime-tort exception could apply, if medical information was at issue such as in *Mekhail* and *Kurowski*. *Id.* at *5.

therefore is not liable under the ECPA." MTD at 17. The entirety of Defendant's argument focuses on whether an interception even occurred when it installed pixel technology. *Id.* at 18-20. But CMHA's position ignores the crime-tort exception to the party-exception. And the Court's analysis should not begin and end with the one-party exemption.

> It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication … ***unless such communication is intercepted for the purpose of committing any criminal or tortious act*** in violation of the Constitution or laws of the United States or of any State.

18 U.S.C. § 2511(2)(d) (emphasis added). Because the crime-tort exception applies, the fact that CMHA was a party to the communications does *not* shield it from liability.[9] *See, e.g.*, *Deteresa v. Am. Broadcasting Cos., Inc.*, 121 F.3d 460, 467, n.4 (9th Cir. 1997) (stating that "[c]riminal or tortious purposes may include "invading [plaintiffs'] privacy, defrauding her, or committing unfair business practices.").

Plaintiffs allege that CMHA intercepted their electronic communications for the purpose of violating HIPAA by collecting and disclosing their PHI and/or IIHI without consent thereby tortiously and criminally invading the privacy of Plaintiffs and Class Members. *See, e.g.*, ¶¶ 332-40. Information is IIHI if it (i) is "created or received by" a health care provider and (ii) either "identifies the individual" or provides a reasonable basis to identify the individual. ¶ 235 (citing 45 C.F.R. § 160.103). It is a federal crime to "knowingly" disclose IIHI to third parties, and there are increased penalties when the crime is "committed with the intent to . . . use" the information "for commercial advantage [or] personal gain." ¶¶ 240 & 339-40 (citing 42 U.S.C. § 1320d-6).

---

[9] *See, supra*, Introduction at 2, collecting healthcare tracking technology cases where courts have upheld plaintiffs' ECPA claims.

District courts nationwide have found that allegations that a healthcare defendant knowingly collects and transmits information that constitutes IIHI, in violation of HIPAA, for financial gain are sufficient to invoke the crime-tort exception. Recently, Judge Engelmayer in *Cooper v. Mount Sinai Health System, Inc.* explained that "where a covered person intentionally disclosed patients' individually identifiable health information, HIPAA makes such a crime, and indeed imposes enhanced penalties when such was done for, *inter alia*, a 'commercial advantage' or 'personal gain.'" 2024 WL 3586357, at *9 (citing 42 U.S.C. § 1320d-6). *See also Kane*, 2024 WL 1178340, at *7 (denying motion to dismiss ECPA claim in a pixel tracking class action where defendant violated HIPAA by receiving and then disclosing "information relating to the provision of health care that could reasonably identify that user").

Here, Defendant is a covered entity under HIPAA that encourages patients like Plaintiffs to use its Web Properties for healthcare services and then uses its platforms to surreptitiously collect and disclose sensitive PHI and IIHI to Meta, Google and other third parties. *See, e.g.*, ¶¶ 5-6, 97 & 246-49. As in many of the cases nationwide that have held a purpose to violate HIPAA is sufficient for the crime-tort exception, Plaintiffs here allege (i) when they began using Defendant's Web Properties; (ii) the specific health conditions they shared with Defendant; (iii) and the actions they took on Defendant's Website, including communicating with healthcare providers, researching medical concerns and treatments, uploading insurance information and scheduling appointments. *See, e.g.*, ¶¶ 39-40, 43-46, 48-50, 61-62, 65-67 & 72-75. Plaintiffs also allege that their medical information was received by CMHA and the information disclosed identifies or provides a reasonable basis to identify them and that they received targeted ads as a result. *Id*. Indeed, Defendant does not dispute that either element of IIHI is met. Accepting Plaintiffs' well-pled factual allegations as true at the Rule 12(b)(6) stage, the purpose of Defendant's disclosure

was to use its patients' data for advertising, marketing and revenue generation in the absence of express written consent in violation of HIPAA. *See, e.g.*, ¶¶ 217, 223, 247, 277, 281 & 329.

Plaintiffs also allege that CMHA intercepted their communications to commit additional tortious and criminal acts. *See, e.g.*, ¶¶ 322, 341 & 351-52. For example, Plaintiffs allege that Defendant's acquisition of patient communications that were disclosed to Meta and other third parties was done for the purpose of and with the intent to violate common law, including negligence (¶¶ 417-32), breach of express contract (¶¶ 356-75), breach of implied contract (¶¶ 398-415) and breach of fiduciary duty (¶¶ 434-37). ¶ 341. Because Defendant's purpose was not solely to make money, but instead to profit from the disclosure of Plaintiffs' medical information, Plaintiffs' allegations are sufficient to invoke the crime-tort exception to the ECPA. *See, e.g.*, *Cooper*, 2024 WL 3586357, at *8 (finding allegations "plausibly support the inference that Mount Sinai, for commercial ends, intentionally disclosed individually identifiable patient health information, and thus violated HIPAA, which makes it a crime for a health care provider to disclose individually identifiable health information for commercial gain").

**D. Factual Questions should not be Resolved on a Motion to Dismiss.**

Finally, whether CMHA had criminal or tortious intent is a factual question for discovery to be decided on the basis of a full evidentiary record. *See, e.g.*, *Cooper*, 2024 WL 3586357, at *8 (explaining that defendant's purpose can be established in discovery); *In re Grp. Health Plan Litig.*, 2023 WL 8850243, at *7–8 ("[D]etermination of [defendant]'s actual purpose for . . . using the Pixel Code requires a factual undertaking."); *Kurowski*, 2023 WL 8544084, at *3 (explaining that "Kurowski lacks the direct access to what occurs in the background on Rush's web properties, and at Facebook, Google, and Bidtellect, that she would need to provide further details supporting her claim of improper disclosures of personal health information"). Precisely because Plaintiffs

"may be able to show" that the crime-tort exception applies at a later, fact-intensive stage, courts have held that it is inappropriate to dismiss a suit at the pleading stage based on the single-party consent defense. *See, e.g.*, *Doe v. Smith*, 429 F.3d 706, 709 (7th Cir. 2005) (even where defendant "obviously consented to the recording, [] that does not justify dismissing the suit. Complaints need not anticipate or attempt to defuse potential defenses").

**2. Plaintiffs State a Plausible Claim for Unjust Enrichment.**

Unjust enrichment claims in North Carolina have five elements: (1) a party confers a benefit upon the other party; (2) the benefit was not conferred officiously—by an interference in the affairs of the other party in a manner that is not justified in the circumstances; (3) the benefit was not gratuitous; (4) the benefit was measurable and (5) the defendant consciously accepted the benefit. *See Stratifyd, Inc. v. Wang*, 2023 WL 6406426, at *4 (W.D.N.C. Sept. 29, 2023) (citing *JPMorgan Chase Bank, National Ass'n v. Browning*, 230 N.C. App. 537, 542 (2013)).

In similar Pixel cases, unjust enrichment claims often overcome Rule 12(b)(6) motions. Recently, in *Salem Health Hospitals and Clinics*, the court declined to dismiss unjust enrichment with elements very similar to North Carolina's: "(1) a benefit conferred, (2) awareness by the recipient that she has received the benefit, and (3) it would be unjust to allow the recipient to retain the benefit without requiring her to pay for it." 2024 WL 3970796, at *7. There, the court found "the benefit conferred was medical information of patients; that Defendant took affirmative steps to collect it; and that it would be unjust for Defendant to retain the benefit from selling this information to advertisers. This amounts to a plausible claim for unjust enrichment." *Id*. *See also Mekhail*, 2024 WL 1332260 (finding the complaint "lays out assertions about the value of Ms. Mekhail's data that was allegedly collected by the Pixel, as well as allegations about the ways that data was deployed to North's benefit through its alleged use of the data in targeted advertisements.

Taken together, these sections of the FAC sufficiently allege that a benefit was conferred on North by monetizing Ms. Mekhail's data"); *Doe v. Tenet Healthcare Corp.*, 2024 WL 1756075, at *5 (D. Mass. Apr. 23, 2024); *In re Grp. Health Plan Litig*., 709 F. Supp. 3d 707, 715 (D. Minn. 2023); *Doe v. Emerson Hospital*, 2023 WL 8869624 (Mass.Super. Nov. 22, 2023) (denying motion to dismiss unjust enrichment); *Doe v. Boone Health, Inc.*, 2023 WL 4996117 (Mo.Cir. July 20, 2023); *Ocampo v. LifeBridge Health, Inc.*, 2023 WL 9853267 (Md.Cir.Ct. Dec. 07, 2023); *Doe v. Main Line Fertility, Ltd.*, 2024 WL 1829564 (Pa.Com.Pl. Jan. 17, 2024).

Plaintiffs certainly plead facts supporting this claim. *See, e.g.*, ¶¶ 438-53. The Complaint describes how Plaintiffs conferred the benefit of their Private Information on CMHA, how the Private Information was conferred in the course of Plaintiffs receiving healthcare services from CMHA (which were offered by CMHA with the promise to keep the information private and secure) and how CMHA accepted that benefit not only for providing healthcare services but to enrich itself by disclosing that information to Facebook and Google without Plaintiffs' permission. *Id*. Plaintiffs also describe the measurable value of their Private Information, ¶¶ 282-93 & 448, and how CMHA enriched itself by exchanging the information with Facebook and Google in return for advanced analytics so that CMHA, Facebook and Google could all target those patients with ads based on their health conditions, ¶¶ 22, 45-47, 66-70, 183, 273-281, 442-43 & 447.

Plaintiffs also allege that they "understood that as part of their bargain for healthcare services with Defendant, Defendant would keep its promises of confidentiality regarding their sensitive PHI, however it was to be received by Defendant." ¶ 213. Plaintiffs further allege that they paid for medical services with reasonable data privacy and security practices and procedures and that they "would have paid much less" for them had they known Defendant would not keep

its promise to keep their information private because those services *without* privacy protections were "worth quantifiably less than the services that Defendant promised to provide." ¶¶ 60 & 445.

Contrary to CMHA's misinterpretation of the pleadings, Plaintiffs note that there is a vast difference between Plaintiffs being required to provide Private Information as necessary to healthcare services, and Defendant being able to do whatever it likes with your Private Information. *Compare* Compl. ¶¶ 40 & 62 *with* MTD at 25. This was not a "trade" whereby Plaintiffs gave Private Information to CMHA to be used however CMMA saw fit; Plaintiffs provided Private Information, in confidence, so that they could receive medical treatment.

On these facts, *Weddle* is easily distinguishable, Plaintiffs affirmatively plead—and reasonable inferences support—that they had an expectation that the benefit they were conferring on Defendant—their PHI—would *not* be shared or sold without conferring a return benefit on Plaintiffs, such as a reduced price for the medical services they purchased. ¶¶ 60 & 445-46. No such return benefit was conferred and CMHA was able to monetize Plaintiffs' PHI for its, Facebook's and Google's business purposes—without compensation to Plaintiffs—because this information is inherently valuable. *See, e.g.*, ¶¶ 22, 47, 70, 183, 277, 281, 442-43 & 447; *see also*, *Brown v. Google LLC*, 2021 WL 6064009, at *17 (N.D. Cal. Dec. 22, 2021) (finding plaintiffs suffer a loss of money when they provide "valuable data" and "receive[] no money in return"). As such, Plaintiffs have stated a plausible unjust enrichment claim.

**3. This Court has Subject Matter Jurisdiction Over the Claims at Issue.**

This Court has subject matter jurisdiction because Plaintiffs have a viable ECPA claim. Accordingly, the analysis of Defendant's Rule 12(b)(1) motion is straightforward: the ECPA claim provides federal question jurisdiction pursuant to 28 U.S.C. § 1331, thus, the Court need not consider whether it also has CAFA jurisdiction.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that this Honorable Court deny CMHA's motion to dismiss, grant leave to amend to address any pleading deficiencies and award all such other relief as equity and justice require.[10]

DATED: September 26, 2024

Respectfully submitted,

s/ *David M. Wilkerson*
David M. Wilkerson
**THE VAN WINKLE LAW FIRM**
11 N Market Street
Ashville, NC 28801
(828) 258-2991
dwilkerson@vwlawfirm.com

**ALMEIDA LAW GROUP LLC**
David S. Almeida*
Britany A. Kabakov*
849 W. Webster Avenue
Chicago, Illinois 60614
(312) 576-3024
david@almeidalawgroup.com
britany@almeidalawgroup.com

**PEIFFER WOLF CARR**
**KANE CONWAY & WISE, LLP**
Brandon M. Wise*
One US Bank Plaza, Suite 1950
St. Louis, MO 63101
(314) 833-4825
bwise@peifferwolf.com

[10] "Leave to amend should be freely given 'when justice so requires.'" *Green v. Brock & Scott, PLLC*, 2020 WL 3404740, at *2 (W.D.N.C. June 19, 2020) (quoting FED. R. CIV. P. 15(a)(2). While Plaintiffs contend sufficient facts have been pled to support each cause of action, should the Court be persuaded to dismiss any claim, Plaintiffs respectfully request leave to file an amended complaint, after guidance from the Court. Plaintiffs submit that this is a reasonable request, particularly where courts nationwide analyzing similar pleadings have done so with varying levels of specificity in the pleadings.

Andrew R. Tate*
235 Peachtree St. NE, Suite 400
Atlanta, GA 30303
(404) 282-4806
atate@peifferwolf.com

*Counsel for Plaintiffs & the Putative Class*

* *pro hac vice* admission

## ARTIFICIAL INTELLIGENCE CERTIFICATION

Pursuant to the Court's June 18, 2024 Order, 3:24-mc-104, I hereby certify that:

- No artificial intelligence was employed in doing the legal research for the preparation of this document, with the exception of such artificial intelligence embedded in standard on-line legal research sources such as Westlaw, Lexis, FastCase, and Bloomberg; and

- Every statement and every citation to an authority contained in this document has been checked by an attorney at this firm and/or paralegal working at their direction as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

This the 26th day of September, 2024.

/s/ *David M. Wilkerson*
David M. Wilkerson