IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION
CIVIL ACTION NO. 3:24-CV-00382-KDB-SCR

| | |
|---|---|
| JULIE ROBERTS AND JUDITH SIGMON,<br><br>Plaintiffs,<br><br>v.<br><br>CHARLOTTE MECKLENBURG HOSPITAL AUTHORITY D/B/A ATRIUM HEALTH, INC.,<br><br>Defendant. | ORDER |

**THIS MATTER** is before the Court on Defendant's Motion to Dismiss for Lack of Jurisdiction and Partial Motion to Dismiss for Failure to State a Claim (the "Motion"). Doc. No. 38. The Court has carefully considered this Motion and the parties' briefs and exhibits. For the reasons discussed below, the Court will **GRANT** in part and **DENY** in part the Motion.

## I. LEGAL STANDARD

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Rule 12(b)(6) of the Federal Rules of Civil Procedure authorizes the dismissal of a complaint if it fails to state a claim upon which relief can be granted. The purpose of Rule 12(b)(6) is to expose deficient allegations "at the point of minimum expenditure of time and money by the parties and the court." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead facts sufficient to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)

1

(citing *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). In evaluating whether a claim is sufficiently stated, "[the] court accepts all well-pled facts as true and construes these facts in the light most favorable to the plaintiff," but does not consider "legal conclusions, elements of a cause of action, ... bare assertions devoid of further factual enhancement[,] ... unwarranted inferences, unreasonable conclusions, or arguments." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*, 591 F.3d 250, 255 (4th Cir. 2009); *see Twombly*, 550 U.S. at 555 (A claim will not survive a motion to dismiss if it contains nothing more than "labels and conclusions, and a formulaic recitation of a cause of action's elements."). That said, "a well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Id.* (internal citation and quotation marks omitted). In other words, a motion to dismiss under Rule 12(b)(6) determines only whether a claim is stated; "it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992).

## II. FACTS AND PROCEDURAL HISTORY

On April 10, 2024, Julie Roberts and Judith Sigmon ("Plaintiffs"), on behalf of themselves and others, filed a proposed class action suit against Charlotte Mecklenburg Hospital Authority d/b/a Atrium Health ("Atrium" or "Defendant") for violation of the federal Electronic Communications Privacy Act ("ECPA") under 18 U.S.C. § 2511(1), *et seq.*, along with numerous state law claims including: (1) breach of express contract, (2) breach of implied duty of good faith and fair dealing, (3) breach of implied contract, (4) negligence, (5) breach of fiduciary duty, and (6) unjust enrichment. Doc. No. 37 at 79-104 (Third Amended Complaint ("TAC")).

Atrium is a healthcare organization offering a broad range of clinical services to patients across North Carolina and other states. TAC at ¶ 2. It is a covered entity under the Health Insurance Portability and Accountability Act of 1996 ("HIPAA") and has approximately 34,000 patient encounters each day across its various lines of service. *Id.* at ¶¶ 2, 237. Plaintiffs were patients at Atrium and interacted with its website and patient portal (collectively, "Web Platforms"), including by providing Personally Identifiable Information ("PII") and Protected Health Information ("PHI"). *Id.* at ¶¶ 30, 33, 39, 61.

The Meta Pixel is a piece of software code that web developers can install to "measure, optimize, and build audiences for … ad campaigns." *Id.* at ¶ 90. It "relies on Facebook cookies, which enable [Facebook] to match … website visitors to their Facebook user accounts." *Id.* at ¶ 91. While installed, Meta's source code sends the content of a person's actions to Meta." *Id.* at ¶ 101. Similarly, Google's pixel technology, which is a piece of software code installed in a manner similar to the Meta Pixel, can "track and log specific consumer actions" and web developers have the ability to customize exactly what is tracked. *Id.* at ¶¶ 121, 123. Google, like Meta, receives the content of a person's actions captured by its tracker. *Id.* at ¶¶ 130-131.

In their TAC, Plaintiffs assert that beginning in 2015 the Meta Pixel and other technologies embedded in Defendant's Web Platforms collected and divulged their PII and PHI to third parties—Meta and Google—without their knowledge. *Id.* at ¶ 4. Those companies then, in turn, provided targeted advertising to Plaintiffs directly related to the PHI that Plaintiffs had shared with Defendant's Web Platforms. *Id.* at ¶¶ 47, 69, 222, 429, 447.

As supplemental authority, Plaintiffs provided the Court with a notice that Defendant published on its website, notifying users that between 2015 and 2019, "online tracking technologies" collected and may have shared the following information with third-party vendors:

> IP address; third-party identifier/cookies (a unique string of numbers or characters); and, in some instances, if contained in a URL address visited by the user or button text clicked by the user, information about a patient's treatment or provider. Additionally, if a user was prompted to fill out a form that included their first and last name, email address, phone number, city, state, ZIP code and gender, that information may also have been shared with these third-party vendors. Based on our review, no Social Security number, financial account, credit card or debit card information was involved. There is no evidence that any information that may have been shared with these third parties has been misused in any way.

Doc. No. 49-1 at 2. The notification shared that the purpose of using online tracking technologies was to "help operate certain features of our Patient Portal and enhance the online experience for users." *Id.* Plaintiffs allege that this sharing of personal information was done for the *purpose* of disclosing HIPAA protected health information to Meta and Google. *See* TAC at ¶¶ 332, 337. Separately, Plaintiffs also assert that Defendant disclosed their personal information for marketing purposes. *Id.* at ¶¶ 1, 207, 223. In addition to receiving targeted advertising relating to their medical conditions, Plaintiffs allege numerous other harms, including the "never-ending threat of identity theft, fraud, phishing scams and harassment," a decrease in the value of their private information, a loss of control of their private information, disruption of medical care and treatment, out of pocket expenses, and a loss of the benefit of the bargain they struck with Defendant, emotional distress, invasion of privacy, and a lack of trust in communicating with doctors online. *Id.* at ¶¶ 26, 222, 374. As a result, Plaintiffs seek damages, along with injunctive and declaratory relief. *Id.* at ¶ 105.

For its part, Defendant asserts that it did not violate the ECPA and asks the Court to dismiss that federal question and decline to exert supplemental jurisdiction over the remaining state law claims. It also argues that the "local controversy" exception to the Class Action Fairness Act ("CAFA") of 28 U.S.C. § 1332(d)(4), precludes diversity jurisdiction over Plaintiff's state law claims and requires dismissal. The Motion is now ripe for the Court's review.

4

### III. DISCUSSION

#### A. The ECPA Claim

At its core, the ECPA is a privacy law governing access and use of electronic communications and was developed to balance the privacy expectations of citizens with the legitimate needs of law enforcement. *See In re Askin,* 47 F.3d 100 (4th Cir. 1995). Under the federal Wiretap Act as amended by the ECPA in 1986, "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used … may in a civil action recover from the person or entity … which engaged in that violation" unless section 2511(2)(a)(ii) excludes the conduct. 18 U.S.C. §§ 2511(1)(a), 2520(a). Electronic communication means "any transfer of signs, signals, writing, images, sounds, data …." 18 U.S.C.A. § 2510(12). However, "[i]t shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire, oral, or electronic communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act in violation of the Constitution or laws of the United States or of any State." 18 U.S.C. § 2511(2)(d). Therefore, for an ECPA claim to survive a motion to dismiss based on the one-party consent rule, Plaintiffs must make sufficient factual allegations that "support an inference that [Defendant] intercepted the communication for the purpose of a tortious or criminal act that is independent from the intentional act of recording." *Caro v. Weintraub*, 618 F.3d 94, 100 (2d Cir. 2010).

Courts "interpreting [the ECPA] have held that mere receipt of a communication does not constitute a violation of § 2511(1)." *Allen v. Novant Health, Inc.*, No. 1:22-CV-697, 2023 WL 5486240, at *4 (M.D.N.C. Aug. 24, 2023). Here, Plaintiffs allege that Defendant "intercepted" communications containing PHI when it was sent to them directly and specifically by Plaintiffs.

TAC at ¶¶ 65-66, 162-163. However, Defendant did not "intercept" anything for purposes of the statute, because they were a party to the communication, and Plaintiff has not otherwise plausibly alleged facts that suggest Defendant intercepted their information in violation of the ECPA. Thus, there was no violation of the ECPA based solely on the interception of a communication.

To avoid the ECPA's "one party consent" provision, Plaintiffs also assert the conclusion that Defendant intercepted their data for the *purpose* of breaching HIPAA. *Id.* at ¶ 332. Under HIPAA, criminal penalties may be imposed when an entity wrongfully discloses IIHI (of which PHI is a subset) for "commercial advantage, personal gain, or malicious harm." 42 U.S.C. § 1320d-6.[1] However, the Court need not accept Plaintiffs' bare assertion, because the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. Even taking Plaintiffs' factual allegations as true, Defendant allegedly used lawfully obtained IIHI for advertising purposes or for commercial gain, but there are no alleged facts from which the Court could conclude that Defendant did so for the *purpose* of committing a criminal or tortious act. As noted above, the notice published on Defendant's website suggests that Defendant's purpose was not to commit a crime or tort (or breach HIPAA). It explains that the purpose of using online tracking technologies was to "help operate certain features of our Patient Portal and enhance the online experience for users." Doc. No. 49-1 at 2. Thus, Plaintiffs have not plausibly alleged that Defendant's purpose for sharing IIHI was to breach HIPAA, and Plaintiffs' ECPA claim will be dismissed.

---

[1] Because there is no private right of action for HIPAA violations, Plaintiffs assertion of an ECPA violation based on an alleged HIPAA violation may be reasonably viewed as an attempted end run around HIPAA's limitations to seek relief for the same alleged harm. *See Payne v. Taslimi,* 998 F.3d 648 (4th Cir. 2021) (noting that every "circuit court to consider whether HIPAA created a private right to *sue* has found that it does not," and citing decisions from the Second, fifth, Sixth, Seventh, Eighth, Ninth, and Tenth Circuits).

### B. Jurisdiction over State Law Claims

In addition to their federal claim under the ECPA, Plaintiffs assert numerous state law claims. Plaintiffs argue that the Court has federal question jurisdiction as to the ECPA claim, and supplemental jurisdiction over the state law claims. *See* 28 U.S.C. §§ 1331, 1367(c)(3). However, a court may decline to exercise supplemental jurisdiction when the court has "dismissed all claims over which it has original jurisdiction." 28 U.S.C. § 1367(c)(3). Courts typically have "wide latitude in determining whether or not to retain jurisdiction over state claims when all federal claims have been extinguished." In making that determination the Court considers factors including "convenience and fairness to the parties, the existing of underlying issues of federal policy, comity, and considerations of judicial economy." *Shanaghan v. Cahill*, 58 F.3d 106, 110 (4th Cir. 1995) (citations omitted). After weighing these factors, the Court concludes that it will decline to exercise supplemental jurisdiction over Plaintiffs' state law claims in the absence of a viable federal question.

The parties have also raised a second basis for jurisdiction, the Class Action Fairness Act ("CAFA"). With respect to CAFA, Plaintiffs double down on the viability of their ECPA claim and simply suggest that analysis as to whether the Court has CAFA jurisdiction is unnecessary. *See* Doc No. 42 at 25. However, Defendant asserts that while CAFA might otherwise offer a second basis for jurisdiction, the Court must decline jurisdiction under the "local controversy" exception.

Congress "enacted CAFA to curb perceived abuses of the class action device which, in the view of CAFA's proponents, had often been used to litigate multi-state or even national class actions in state courts." *Priselac v. Chemours Co.*, 561 F. Supp. 3d 562, 569 (E.D.N.C. 2021) (quoting *Jackson v. Home Depot U.S.A., Inc.*, 880 F.3d 165, 168 (4th Cir. 2018)) (quotations

7

omitted), *aff'd*, *Home Depot U. S. A., Inc. v. Jackson*, 587 U.S. 435 (2019). CAFA grants the district court original jurisdiction over "any civil action in which the matter in controversy exceeds the sum or value of $5,000,000 exclusive of interest and costs, and is a class action in which … any member of a class of plaintiffs is a citizen of a State different from any defendant." 28 U.S.C. § 1332(d)(2)(A); *see id.* Specifically, § 1332(d)(2)(A) of CAFA requires: (1) minimal diversity, (2) an amount in controversy greater than $5,000,000, and (3) a class action with at least 100 members. *See also* 28 U.S.C. § 1332(d)(5). However, under the "local controversy" exception, the Court *must* decline to exercise jurisdiction when two-thirds or more of the members of the proposed class in the aggregate and the primary defendants are citizens of the state in which the action was filed. *See* 28 U.S.C. § 1332(d)(4)(B). Here, Defendant is a citizen of North Carolina and based on its review of those who have established patient portal accounts (and are therefore most likely to have been impacted by the pixel technology), approximately 79% are citizens of North Carolina.[2] Doc. No. 39 at 14. Plaintiffs do not dispute Defendant's estimations as to the citizenship of the impacted population, and Plaintiffs have failed to make an argument as to why CAFA applies. Because nearly 80% of the proposed class members, as well as Defendant, are citizens of North Carolina, the Court *must* decline jurisdiction under CAFA. Thus, the Court will dismiss all the state law claims without prejudice[3] so that Plaintiffs may refile them in the proper forum.

### IV. ORDER

**NOW THEREFORE IT IS ORDERED THAT:**

---

[2] Of 2,686,902 individuals who had established patient portal accounts (as of the date of this action), 2,120,765 reported their state of residence as North Carolina. Doc. No. 39 at 14.
[3] The Court does not express any opinion as to ultimate merit of any of the state law claims, including the claim for unjust enrichment.

1. Defendant's Partial Motion to Dismiss for Failure to State a Claim (Doc. No. 38) is **GRANTED** as to the ECPA claim and **DENIED** without prejudice as to the unjust enrichment claim and the other state law claims;

2. Defendant's Motion to Dismiss for Lack of Jurisdiction (Doc. No. 38) is **GRANTED**; and

3. The Clerk is directed to close this matter in accordance with this Order.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: March 20, 2025

Kenneth D. Bell
United States District Judge